**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee*,

v.

ENRIQUE VALENCIA-LOPEZ,
　　　　　　*Defendant-Appellant.*

No. 18-10482

D.C. No.
4:17-cr-00894-
JGZ-BGM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted March 5, 2020
Phoenix, Arizona

Filed August 19, 2020

Before: Michael Daly Hawkins, John B. Owens, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett;
Dissent by Judge Owens

# SUMMARY[*]

## Criminal Law

The panel vacated convictions for four drug felonies in connection with the defendant's transportation and importation of marijuana, and remanded for a new trial, in a case in which the defendant, who claimed that he acted under duress, argued that the district court erred in allowing an ICE supervisory special agent's testimony.

The defendant claimed that armed gunmen seized his truck in Mexico and held him at gunpoint for several hours, during which time a confederate (or confederates) of the gunmen drove the truck away and returned; and that the gunmen told the defendant to continue driving and pretend nothing had happened or they would kill him and his family.

The ICE special agent testified as an expert for the government. A key part of his testimony was that the likelihood drug trafficking organizations would entrust a large quantity of illegal drugs to the driver of a commercial vehicle who was forced or threatened to comply was "[a]lmost nil, almost none."

The panel held that, in allowing the special agent to testify, the district court abused its discretion by not properly fulfilling its gatekeeping role under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 1999), where it made no

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reliability findings, as required by Fed. R. Evid. 702, about the special agent's testimony, and where the record contains no evidence as to why the special agent's experience and knowledge equals reliability for the "almost nil, almost none" testimony. The panel explained that dismissing an argument as "going to the weight, not admissibility" of the expert's testimony is not a reliability determination; and noted that before the special agent said those words on the witness stand, the government had never told the court or the defendant that the special agent would so testify. The panel wrote that even if it were to consider the special agent's explanations of his experience after he was qualified as an expert, such as on cross-examination, that evidence still does not explain the methodology by which he reliably concluded that drug trafficking organizations almost never use coerced drivers. The panel concluded that the error was not harmless.

Dissenting, Judge Owens wrote that even if the district court erred by not explicitly finding reliability (an issue he doesn't reach), the record, in light of the special agent's background and experience, sufficiently establishes his testimony was reliable and admissible under *Daubert*, such that the "lack of an explicit finding of reliability" was harmless.

**COUNSEL**

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Corey J. Mantei (argued), Assistant United States Attorney; Robert L. Miskell, Chief, Appellate Section; Michael Bailey, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

Enrique Valencia-Lopez, a truck driver, was transporting 15,000 kilograms of bell peppers from Mexico to Arizona. Customs and Border Protection officers stopped him at the border and found over 6,000 kilograms of marijuana hidden within the pepper packages. Valencia-Lopez was convicted of four drug felonies for his transportation and importation of the marijuana.[1] He was sentenced to 120 months.

Valencia-Lopez claimed he acted under duress; that armed gunmen seized his truck in Mexico and held him at gunpoint for several hours. During that time, a confederate (or confederates) of the gunmen drove the truck away and

---

[1] The jury convicted Valencia-Lopez of: (1) conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii); (3) conspiracy to import marijuana, in violation of 21 U.S.C. § 963; and (4) importation of marijuana, in violation of 21 U.S.C. § 952(a) and § 960(a)(1), (b)(1)(G).

returned it. The gunmen then told Valencia-Lopez to continue driving and pretend nothing had happened, or they would kill him and his family. During the trial, and over repeated pretrial and trial objections, U.S. Immigration and Customs Enforcement ("ICE") Supervisory Special Agent Matthew Hall testified as an expert for the government. A key part of his testimony was that the likelihood drug trafficking organizations would entrust a large quantity of illegal drugs to the driver of a commercial vehicle who was forced or threatened to comply was "[a]lmost nil, almost none." If this was believed by the jury, it would have gutted Valencia Lopez's duress defense.

On appeal, Valencia-Lopez argues that the district court erred in allowing Agent Hall's testimony. We conclude that, in allowing Agent Hall to so testify, the district court did not properly fulfill its gatekeeping role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). On this record, the error was not harmless, and Agent Hall's "almost nil" expert testimony was not reliable, so we vacate Valencia-Lopez's conviction and remand for a new trial.

## I.

Valencia-Lopez drove his truck and tractor-trailer into the United States at the U.S.-Mexico border checkpoint in Nogales, Arizona. The shipping manifest listed a cargo of bell peppers weighing 14,969 kilograms. During secondary inspection, the inspectors also found 6,230 kilograms of marijuana concealed among the bell peppers. After Valencia-Lopez was arrested, he told the officers he had been kidnapped in Mexico and forced to drive his truck into the United States.

Valencia-Lopez was charged with four marijuana related felonies. Before trial, the government stated it would offer expert testimony that "drug-trafficking organizations do not typically use unknowing couriers." After Valencia-Lopez moved to preclude that testimony, the government amended the proposed testimony to include a "risk-management analysis that the use of threatened couriers would place the narcotics at a higher risk for seizure than using non-threatened couriers."

Valencia-Lopez then filed a second motion to preclude expert testimony and requested a *Daubert* hearing.[2] He argued a *Daubert* hearing was necessary because "there [was] no methodology whatsoever to substantiate Agent Hall's proposed testimony," and Agent Hall lacked relevant expertise. The district court denied both motions. The court found the proposed expert testimony was relevant and told the defense there "certainly . . . can be voir dire of the expert . . . to assure that he is qualified to testify as to these matters" at trial, "assuming that the government can lay an appropriate foundation for the expert's expertise in relevant matters." The court did not discuss reliability.

At trial, the government presented five witnesses—four customs officers involved in the inspection or arrest, and Agent Hall. Before Agent Hall's testimony, defense counsel asked the court how to proceed, given that Valencia-Lopez was still disputing Agent Hall's expertise and asking if the defense should voir dire Agent Hall after the government was "done trying to qualify" Agent Hall. The court told counsel that "the issue is whether or not the questioning establishes a foundation and then if you don't believe it does,

---

[2] Valencia-Lopez sought a *Daubert* hearing after the government replaced its original proposed expert with Agent Hall.

then you would be able to raise that issue or do additional voir dire at that time," confirming that defense counsel would be able to voir dire then.

On direct examination Agent Hall testified to his law enforcement background. He explained that he had been working for Homeland Security Investigations (HSI), a branch of ICE, since 2010. Before that he worked as a police officer with the Swinomish Tribe in Washington in 1999-2000, and the Tohono O'dham Tribe in Arizona from around 2002 through 2010. From 2007 to 2010 he was on the HSI task force, assigned from the Tohono O'dham Police Department. Agent Hall then explained his drug smuggling training, his undercover work as a police officer and supervisor, and his subsequent work at HSI "working on crimes with a nexus to the [Tohono O'dham] Nation." He noted, for example, that working undercover gave him insight into how drug trafficking organizations operate because he "gather[ed] information straight from the horse's mouth" and he successfully went undercover in these organizations "[i]n several instances, on many different levels." As an HSI agent, he obtained a commercial trucking license from a commercial trucking school while in an undercover capacity. Agent Hall also generally outlined his experience with setting up undercover drug trafficking deals across the border, while noting that he did not operate undercover in Mexico.[3] After Agent Hall testified that he

---

[3] The government's proffer also included Agent Hall's CV, which noted that he personally conducted thousands of interviews and also reviewed thousands of interviews of "marijuana backpackers, guides, scouts, drug trafficking coordinators, recruiters, resupply load personnel, stash house operators, recruiters and street level and wholesale distributors of illegal drugs."

had served as an expert witness in federal drug smuggling cases, the government moved to qualify him as an expert.

Valencia-Lopez timely objected and requested to either explain the basis for the objection or be allowed to voir dire Agent Hall. The court then asked counsel at sidebar to explain the objection. Counsel explained she would prefer to voir dire Agent Hall "to show the Court more reasons why he doesn't qualify as an expert in this type of case." The court asked to hear argument "since [they] were over here." After counsel argued that Agent Hall lacked any experience directly working with drug cartels in Mexico and had not adequately explained the basis for his specialized knowledge, and the government responded, the court ruled the objection went "more to the weight of the evidence as opposed to its admissibility" and found "the foundation ha[d] been established" for Agent Hall to testify as an expert "as to how drug trafficking organizations operate."

Valencia-Lopez again objected and asked to conduct a *Daubert* hearing through voir dire. The court overruled the objection, did not allow voir dire, and found a *Daubert* hearing was not required "particularly in light of the issues that were raised in the *Daubert* hearing about testing and such that don't apply to experts such as Agent Hall." The court then told the jury that it "recognize[d] Agent Hall as an expert on the issue of drug trafficking cartels' operations and methodology."

Once qualified, Agent Hall testified to the similarities between a drug trafficking organization and a legal business, the approximate value of the marijuana found in Valencia-Lopez's truck, and the risks to a cartel of using an unwilling or unknowing driver. Finally, in response to the government's question about "the likelihood regarding whether [drug trafficking organizations] would entrust a

large quantity of illegal drugs to the driver of a commercial vehicle who's been forced or threatened to comply," Agent Hall replied, "[a]lmost nil . . . . Almost nil, almost none."

After the government rested, Valencia-Lopez presented his duress defense. He testified and called other witnesses, including two experts. Valencia-Lopez first explained that his brother had disappeared years before, and his family found his brother's remains three months later. Valencia-Lopez believed the cartels killed his brother. Valencia-Lopez also testified that several years before being stopped at the border, he had been shot in the back by cartel members while returning from a work trip in Mexico. He showed his gunshot scars to the jury.

Valencia-Lopez next testified to what happened before he arrived at the checkpoint. He picked up a load of bell peppers in Sinaloa, Mexico for delivery to Arizona. About 80 kilometers south of the border, he pulled off for a bathroom stop where he was accosted by two armed men. At gunpoint, the men took his wallet with his driver's license,[4] phone, and keys, and placed Valencia-Lopez face down in the back of their car. The men "took the truck" and "came back with it" about ninety minutes later. The men returned the wallet and phone to Valencia-Lopez and told him to keep driving north. They also told him to pretend nothing had happened or they would kill him and his family. Valencia-Lopez followed these directions because he "had no choice." The court gave Valencia-Lopez's requested jury instruction on duress.

---

[4] Valencia-Lopez testified his driver's license listed his home address, where he and his family lived.

During closing argument, the government relied on Agent Hall's testimony to emphasize not only that "the use of unwilling, unknowing couriers is not a practical way to smuggle drugs into the United States," but also that "there is almost no use of unwitting, unwilling couriers."

The jury convicted Valencia-Lopez as charged.

We have jurisdiction under 18 U.S.C. § 1291.

## II.

"We review the district court's decision to admit expert testimony for an abuse of discretion." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citation omitted). We first "consider whether the district court identified the correct legal standard for decision of the issue before it," and we then "determine whether the district court's findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

Valencia-Lopez argues that the district court abused its discretion by admitting Agent Hall's testimony without adequately performing its gatekeeping role under *Daubert* and Federal Rule of Evidence 702. Under Rule 702, before admitting expert testimony, "the district court must perform a 'gatekeeping role' [to] ensur[e] that the testimony is both 'relevant' and 'reliable.'" *Ruvalcaba-Garcia*, 923 F.3d at 1188 (citing *Daubert*, 509 U.S. at 597). This gatekeeping obligation "applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (citing *Kumho Tire*, 526 U.S. at 147). Valencia-Lopez does not challenge the district court's

finding that Agent Hall's testimony was relevant. We thus look only to whether the district court appropriately determined that the testimony was reliable. It did not.

*Daubert* discussed several reliability factors, including testing, peer review and publication, known or potential rate of error, and general acceptance in the relevant scientific community. 509 U.S. at 592–94. But "[t]he reliability inquiry is a 'flexible one,'" and the district court has "broad latitude to determine" what factors in *Daubert*, if any, are relevant to the reliability determination. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (quoting *Kumho Tire*, 526 U.S. at 150, 153). The district court "also has broad latitude in determining the appropriate form of the inquiry." *Id.* (citing *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000)). But "the trial court's broad latitude to make the reliability determination does *not* include the discretion to abdicate completely its responsibility to do so." *Elsayed Mukhtar v. Cal. State. Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *overruled on other grounds by Barabin*, 740 F.3d 457. We have explained that a district court abdicates its gatekeeping role, and necessarily abuses its discretion, when it makes no reliability findings. *See Ruvalcaba-Garcia*, 923 F.3d at 1189; *Barabin*, 740 F.3d at 464.

*Daubert* and *Kumho Tire* may be harder to apply when the expert testimony is "experience-based" rather than "science-based." But any such difficulty cannot simply lead to a "that goes to weight, not admissibility" default, as here. Indeed, we see a strong argument that reliability becomes more, not less, important when the "experience-based" expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony. The Supreme Court has made it abundantly clear

that reliability is the lynchpin—the flexibility afforded to the gatekeeper goes to *how* to determine reliability, not *whether* to determine reliability:

> [W]here [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline."
>
> . . . .
>
> . . . The objective of [*Daubert*'s gatekeeping requirement] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire*, 526 U.S. at 149, 152 (third alteration in original) (citations and quotation marks omitted).

Here, the district court made no reliability findings about Agent Hall's testimony. Agent Hall had sufficient experience and knowledge to qualify as an expert. But the record contains no evidence as to why that experience, by itself, equals reliability for his testimony that there was "[a]lmost nil, almost no[]" likelihood drug cartels would do what Valencia-Lopez testified happened here—coerce him, at gunpoint, to carry illegal drugs across the border. At the final pretrial conference, the district court denied Valencia-Lopez's motions in limine after finding that Agent Hall's

testimony would be relevant "assuming the government can lay an appropriate foundation for the expert's expertise in relevant matters." Nothing was said about reliability. At trial, the district court again denied Valencia-Lopez's objections after the government qualified Agent Hall as an expert. The district court explained that "the objections and points . . . rais[ed] go more to the weight of the evidence as opposed to its admissibility and I believe that the foundation has been established, so I will recognize Agent Hall as an expert as to how drug trafficking organizations operate." But dismissing an argument as "going to the weight, not admissibility, of [the expert's] testimony" is *not* a reliability determination. *See Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017).

Then, Valencia-Lopez again asked for a *Daubert* hearing. The court rejected his request because it did not "believe that a Daubert hearing is required in these circumstances, particularly in light of the issues that were raised in the Daubert hearing about testing and such that don't apply to experts such as Agent Hall." Yet as the government acknowledges, "Agent Hall's non-scientific testimony was subject to the same 'gatekeeping function' identified in" *Daubert* and *Kumho Tire*. While the district court here did not have to hold a *Daubert* hearing, *see Alatorre*, 222 F.3d at 1105, it still had an unwavering gatekeeping obligation to determine the reliability of Agent Hall's testimony. For example, in *Alatorre*, we found the district court satisfied its gatekeeping obligation, even though it denied a request for a pretrial *Daubert* hearing, because it allowed the defendant to conduct lengthy voir dire at trial before overruling his relevance and reliability objections. *Id.* In contrast, the district court here denied Valencia-Lopez's requests for voir dire after the government moved to qualify Agent Hall as an expert, even though it had

twice stated defense counsel would have this opportunity in place of a pretrial *Daubert* hearing.**[5]** With no *Daubert* hearing or voir dire, "'some [other] reliability determination must be apparent from the record' before we can uphold a district court's decision to admit expert testimony." *Elsayed*, 299 F.3d at 1066 (quoting *United States v. Velarde*, 214 F.3d 1204, 1210 (10th Cir. 2000)). We find none in the record; rather, the district court qualified Agent Hall as an expert without explicitly finding his proposed testimony reliable.**[6]** That was an abuse of discretion.

The district court also did not fulfill its gatekeeping role for a second, more important reason. The court admitted Agent Hall's testimony despite the government establishing no reliable basis for Agent Hall's "[a]lmost nil, almost none" expert testimony. *See Hermanek*, 289 F.3d at 1093. This is particularly troubling here. Before Agent Hall said those words on the witness stand, the government had never told the court or the defendant that Agent Hall would so testify.

---

**[5]** We need not decide today whether a district court fulfills its gatekeeping role without either allowing voir dire or conducting a *Daubert* hearing. *Cf. Barabin*, 740 F.3d at 463 (noting that the district court has "broad latitude in determining the appropriate form of the inquiry"). We note only that voir dire is a recommended method for the district court to conduct a reliability determination and discharge its gatekeeping obligations. *See* 29 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 6264.3 (2d ed.) (Aug. 2019 update) ("Before the court rules on whether a witness is qualified to testify as an expert, the opposing party should be afforded an opportunity to conduct a voir dire examination of the witness concerning the witness's qualifications.").

**[6]** An implicit reliability finding is "not sufficient." *Ruvalcaba-Garcia*, 923 F.3d at 1190. Instead, to "satisfy its 'gatekeeping duty' under *Daubert*, the court must 'make an explicit reliability finding.'" *Id.* (quoting *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007)).

*See* Fed. R. Crim. P. 16(a)(1)(G). It is one thing for a witness with Agent Hall's expertise to testify as to the risks to a cartel of using a coerced courier. But that is a far cry from him essentially testifying that the cartel never does it. Such testimony would not be allowed, for example, in a civil case involving a death allegedly caused by an inoculation without a rigorous reliability evaluation of the causation opinion.[7] We know the nature of such evaluation is not carved in stone, either for that hypothetical case or this real one. But we also know that this evaluation is required.

As we explained in *Hermanek*, the district court's gatekeeper role includes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Hermanek*, 289 F.3d at 1093 (quoting *Daubert*, 509 U.S. at 592–93). This "prerequisite to making the Rule 702 determination that an expert's methods are reliable" requires the district court to "assure that the methods are adequately explained." *Id.* at 1094. Agent Hall never explained the methodology, if any, that he relied on to arrive at the near-zero probability of drug trafficking organizations using coerced couriers. Rather, the district court appeared to rely on Agent Hall's general qualifications to qualify him as an expert, contrary to our admonition in *Hermanek. See id.* Moreover, the record does not establish the method Agent Hall employed to arrive at his "almost nil" opinion. Indeed, it is the government's burden to "establish the reliability of the principles and methods employed 'to draw a conclusion regarding *the particular matter to which the expert testimony*

---

[7] Imagine there the expert being asked: "Dr. Smith, what is the likelihood that the inoculation caused Ms. Jones's death?" Reply: "Almost nil, almost none."

*was directly relevant*.'" *Id.* at 1094 (quoting *Kumho Tire*, 525 U.S. at 154). The government did not do so here.

The government submitted Agent Hall's general qualifications in its proffer. Agent Hall also testified to his law enforcement expertise, his experience with undercover work, including obtaining a commercial trucking license, and his experience with other federal cases in which he was an expert witness. He also noted that most of his cases arose in the United States and he did not "operate in an undercover capacity . . . in Mexico." His qualifications and experience are relevant, and indeed necessary. But they cannot establish the reliability and thus the admissibility of the expert testimony at issue. *See id.* at 1093–94. Rather, like the expert in *Hermanek*, Agent Hall "failed to explain in any detail the knowledge, investigatory facts and evidence he was drawing from," *id.* at 1094, to eventually conclude the probability of coercion by drug trafficking organizations was "almost nil." Crucially, he failed to link his general expertise with his "almost nil" conclusion, and by never explaining *how* his expertise lent itself to that conclusion, we cannot sort out what "reliable principles and methods underlie the particular conclusions offered." *See id.*

Even if we were to consider Agent Hall's explanations of his experience *after* he was qualified as an expert, such as on cross-examination, that evidence still does not explain the methodology by which he reliably concluded that drug trafficking organizations almost never use coerced drivers.[8] For example, his general testimony about his interviews with

---

[8] Ordinarily, "[t]he district court's 'gatekeeping function under *Daubert* ensures that expert evidence is sufficiently relevant and reliable *when it is submitted to the jury*." *Nease*, 848 F.3d at 231 (noting that defense cross-examination after qualification was insufficient).

cartel members in Mexico is too "vague and generalized" to establish any reliable principles or methods, *id.*, from which to determine the reliability of his almost nil conclusion. Even had he testified that he was familiar with the "right" type of cartels; given his lack of experience within Mexico, and with no explanation of his methodology, "there is simply too great an analytical gap between" his experience and his conclusion. *Id.* at 1095 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *accord United States v. Vera*, 770 F.3d 1232, 1243, 1247 (9th Cir. 2014) (general law enforcement experience in the FBI and gang task force insufficient to support drug expert testimony not based on reliable methodology).

The government argues that "Special Agent Hall's opinions were based on his personal experiences and knowledge from his drug investigations. The defendant's demand for additional 'reliable methods' and 'sufficient facts or data' cited in Rule 702 are not at issue like [in] *Hermanek* because Special Agent Hall fully explained the background for his opinions." This response is well off the mark. The issue is not whether Agent Hall had knowledge and experience sufficient to allow him to testify as an expert on the modus operandi of drug cartels. He did. Nor is the issue whether he had sufficient "background for his opinions." Rather, the issue is whether he provided a reliable basis for his opinion that the likelihood of drug cartels using coerced couriers is "[a]lmost nil, almost none." As explained above, he did not.

The government also contends that several of our previous cases compel us to find that there was no error here. Again, the government's argument fails. For example, the government cites *United States v. Cordoba*, 104 F.3d 225 (9th Cir. 1997), a pre-*Kumho Tire* case. *Cordoba* held that

"*Daubert* applies only to the admission of scientific testimony" and is "inapplicable" to non-scientific expert drug organization modus operandi testimony. 104 F.3d at 230. *Kumho Tire* held to the contrary. The government also cites a pre-*Daubert* case, *United States v. Johnson*, 735 F.2d 1200 (9th Cir. 1984). But *Johnson* simply recites the unremarkable principle that "government agents . . . may testify as to the general practices of criminals to establish the defendants' modus operandi." *Id.* at 1202. That does not change the analysis here. The government also cites *United States v. Sepulveda-Barraza*, 645 F.3d 1066 (9th Cir. 2011) and *United States v. Murillo*, 255 F.3d 1169 (9th Cir. 2001) *overruled on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005). *Sepulveda-Barraza* is distinguishable because the reliability of the expert testimony was not at issue. 645 F.3d at 1072–73. And in *Murillo*—where the testimony concerned unknowing rather than coerced couriers—there was no indication that the trial court failed to make any reliability finding, and, unlike here, there was "clear evidence in the trial transcript that an adequate voir dire was conducted." 255 F.3d at 1178.

We do not question that expert modus operandi testimony is admissible in drug smuggling cases involving unknowing or coerced couriers. But the government must still establish that its expert opinions are reliable under the standards mandated by *Daubert* and *Kumho Tire.* The government failed to do so here.

## III.

Having established the district court abused its discretion by admitting Agent Hall's testimony without having performed its gatekeeping function, we must now determine whether the inclusion of Agent Hall's testimony was harmless error. *See Ruvalcaba-Garcia*, 923 F.3d at 1190.

The government must show that the error was not prejudicial, that it did not affect a "substantial right." *Barabin*, 740 F.3d at 464. We begin with the presumption of prejudice, which the government can rebut by showing "it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted." *Id.* at 465 (citation omitted).

The error here was not harmless. As the government accurately states, "[t]he central issue at trial was whether the defendant's transportation of marijuana was under duress," and "Agent Hall's testimony about unwilling couriers 'went right to the heart of the defendant's defense' that he acted under duress." The government argues that "[t]he jury was free to disbelieve the defendant and infer the opposite of his testimony to support its verdict." True. But Agent Hall's testimony went "to the heart" of the most important issue in the case. *See Barabin*, 740 F.3d at 465 ("Prejudice is at its apex when the district court erroneously admits evidence that is critical to the proponent's case."). And the government emphasized that testimony in its closing. While the government also asserts that "[t]he defendant's testimony was unbelievable and inconsistent with the evidence as a whole," part of the reason it was arguably unbelievable was Agent Hall's opinion, and part of the "evidence as a whole" was that same opinion. Without Agent Hall, the government could not attack Valencia-Lopez's duress defense.

As the government acknowledges, "the jury heard competing expert testimony from Special Agent Hall and Dr. Chalk," Valencia-Lopez's expert on drug trafficking

organizations,[9] "on the topic of whether drug trafficking organizations use unwilling couriers[.]"[10] Valencia-Lopez testified that he owned the truck and he suspected something illegal was put in it. Thus a core question for the jury was whether he voluntarily transported the drugs or whether he acted under legal duress. In other words, did the jury believe Valencia-Lopez (and his expert), or did the jury believe Agent Hall? Agent Hall testified that *in his expert opinion* the chance that "a large quantity of illegal drugs to the driver of a commercial vehicle who's been forced or threatened to comply" is "[a]lmost nil, almost none." In so saying, Agent Hall's expert opinion directly undercut Valencia-Lopez's story and his credibility, as well as Dr. Chalk's expert testimony. *Cf. United States v. Gutierrez*, 995 F.2d 169, 172 (9th Cir. 1993) (noting that the "expert testimony of a law enforcement officer . . . often carries an aura of special reliability and trustworthiness" (citation omitted)). As such, allowing Agent Hall to so testify obviously and substantially impacted the viability of Valencia-Lopez's duress defense.[11]

---

[9] Dr. Chalk testified about the resources cartels have in the regions where Valencia-Lopez lived and travelled through on his way to the border, the cartels' use of coercive techniques and threats to recruit unwilling participants, and their use of coerced and blind couriers along with willing participants as part of their overall drug trafficking strategy.

[10] The government did not challenge the admissibility of Dr. Chalk before the district court but contends now that "if Special Agent Hall was unqualified to testify as an expert, Dr. Chalk was not qualified either." As it was not challenged below, this argument is waived. Further, we fail to see how finding both experts unqualified aids the government in showing this error was harmless.

[11] Because the district court allowed the duress defense to go to the jury, it must have found that the evidence Valencia-Lopez presented was enough to support it. *See United States v. Ibarra-Pino*, 657 F.3d 1000,

In sum, the government bears the burden of proving the error was harmless, and it cannot merely speculate that the jury both disregarded Agent Hall's testimony and disbelieved Valencia-Lopez's testimony. The government has not carried its burden—the error here was not harmless.[12] We thus vacate Valencia-Lopez's convictions and remand for a new trial.[13]

**VACATED and REMANDED.**

---

1004 (9th Cir. 2011) (noting that the defendant must make "a prima facie showing of duress in a pretrial offer of proof, or in evidence presented at trial" to be entitled to a jury instruction on duress (citation omitted)).

[12] Our cases make clear that when we cannot determine reliability from the trial record, remand for a new trial is necessary. *Barabin*, 740 F.3d at 466; *United States v. Christian*, 749 F.3d 806, 813–14 (9th Cir. 2014). But even if our circuit allowed a limited remand when the appellate court could not determine reliability from the record, it would not avail the government here. The government had a full opportunity to present its case as to admissibility and failed to show that Agent Hall's key opinion was reliable and thus admissible. As such, had the district court made an explicit reliability determination on this record, it would still have abused its discretion by admitting the "[a]lmost nil, almost none" testimony.

[13] Because we vacate Valencia-Lopez's convictions and remand for a new trial, we do not reach Valencia-Lopez's other issues except one, because it may arise again if the case is retried.

Valencia-Lopez argues that Agent Hall's "almost nil" testimony violated Rule 704(b). We find that if Agent's Hall's testimony had been otherwise admissible, its admission would not have violated Rule 704(b). Rule 704(b) provides, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). That rule was not implicated by Agent Hall's testimony. In *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997) (en banc),

OWENS, Circuit Judge, dissenting:

I respectfully dissent.  Even if the district court erred by not explicitly finding reliability (an issue which I do not reach), our inquiry does not end there.  We can decide on appeal whether Agent Hall's testimony should have been permitted when "the record is sufficient to determine whether the expert testimony is relevant and reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1190 (9th Cir. 2019) (per curiam) (citation and alteration omitted).  "And when the record shows that the expert's testimony satisfied the requirements for admission, we may conclude that the district court's failure to make an explicit finding of reliability was harmless."  *Id.* (citation and internal quotation marks omitted).  Thus, before considering whether Agent Hall's testimony prejudiced Valencia-Lopez to require a new trial, if the record suffices, we should conduct our own "admissibility analysis and decide whether the admission itself was erroneous."  *Id.* (citation omitted).

In my view, the record here amply establishes that Agent Hall's testimony had "a reliable basis in the knowledge and experience of the relevant discipline."  *Id.* (citation omitted). The government therefore satisfied its burden to show

we held that Rule 704(b) prohibits "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*." But we made clear that the only testimony excluded is "as to a defendant's actual mental state during the charged offense or testimony which necessarily would imply that ultimate conclusion," and not expert testimony about "facts or opinions from which the jury could conclude or infer the defendant had [or lacked] the requisite mental state." *Id.* at 1038 (quotation marks and citation omitted). Agent Hall's testimony here falls in the latter category.

We also do not bar the government from seeking to establish the reliability and admissibility of Agent Hall's testimony in any new trial.

harmlessness. *Id.* Agent Hall had almost two decades of law enforcement experience and was at the time of trial assigned to supervise the high intensity drug trafficking force in Sell, Arizona, on the U.S.-Mexico border. Over his career, he had been involved in 20–30 investigations at the Mariposa port of entry and worked undercover operations with border-related crimes and narcotics. This undercover work involved commercial truck driving and setting up transportation of narcotics across the border and further into the United States. His information was sourced from his undercover work, training, and confidential informants. This type of background and experience qualified Agent Hall to testify about how drug trafficking organizations operate. *See United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (stating that the reliability of a law enforcement officer "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it").

Agent Hall also had previously been qualified to testify as an expert seven times in federal court for drug trafficking cases and one alien smuggling case. This fact alone does not make him reliable, but he testified extensively on direct examination about the sources for his opinions, which included interviewing over 1,000 people involved in smuggling narcotics, reviewing case files and interviews, and accessing law enforcement databases. *See Ruvalcaba-Garcia*, 923 F.3d at 1191 (citing *United States v. Alatorre*, 222 F.3d 1098, 1108 (9th Cir. 2000)).[1] He was also

---

[1] *See also, e.g.*, *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997) (holding that a law enforcement officer with extensive training, over 200 investigations, and background as a special agent at the DEA was qualified to opine on trade techniques employed by drug dealers, so admitting him without qualifying him as an expert

extensively cross-examined about the basis for his opinions, including his knowledge of the Mariposa port of entry and his work in Mexico.

In light of Agent Hall's background and experience, I think the record sufficiently establishes his testimony was reliable and admissible under *Daubert*. *See Id.* Therefore, the "lack of an explicit finding of reliability was harmless," so I would affirm. *Id.* (citation omitted).

---

was harmless); *United States v. Rubi*, 775 F. App'x 865, 866 (9th Cir. 2019) (unpublished) (concluding in an unknowing courier case that the government expert's reliability was established through testimony "regarding his extensive background and experience in drug trafficking cases").