FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

LUIS MIGUEL CASTRO ALAVEZ,

*Defendant - Appellant.*

No. 24-1921

D.C. No.
1:23-cr-00055-
SOM-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted June 3, 2025
Honolulu, Hawaii

Filed February 20, 2026

Before: William A. Fletcher, Morgan B. Christen, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Desai

# SUMMARY[*]

## Criminal Law

The panel affirmed in part and vacated in part the district court's judgment, and remanded, in a case in which a jury found Luis Miguel Castro Alavez guilty of one count of attempted possession with intent to distribute 500 grams of a mixture containing methamphetamine and one count of conspiracy to possess 500 grams of a mixture containing methamphetamine.

Castro Alavez argued that his conviction and sentence for attempted possession of a specific drug type and quantity should be reversed under *United States v. Hunt*, 656 F.3d 906 (9th Cir. 2011), because the district court improperly instructed the jury that "the government does not have to prove that [Castro Alavez] knew that the controlled substance was methamphetamine or knew the quantity of methamphetamine." The panel agreed in part. To impose the heightened penalty prescribed by 21 U.S.C. § 841(b)(1)(A)(viii), the government must prove that Castro Alavez *intended* to possess 500 grams of a methamphetamine mixture. On the facts of this case, the district court's erroneous jury instruction was not harmless. The panel declined to extend to the attempt context a line of conspiracy cases that require no heightened mens rea beyond what the underlying crime requires. The panel therefore vacated Castro Alavez's sentence for attempted possession of a controlled substance, but not his conviction.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Castro Alavez also argued that his attempt conviction and conspiracy conviction should be vacated because the district court improperly admitted religious images and expert testimony about "narco saints." While the expert testimony did not satisfy Federal Rule of Evidence 702, the panel held that the district court's error in admitting this evidence was harmless. The panel thus affirmed Castro Alavez's convictions.

## COUNSEL

Michael F. Albanese (argued), Sara Ayabe, and Gregg P. Yates, Assistant United States Attorneys; Clare E. Connors, United States Attorney; Office of the United States Attorney, United States Department of Justice, Honolulu, Hawaii; for Plaintiff-Appellee.

Georgia K. McMillen (argued), Law Office of Georgia K. McMillen, Wailuku Maui, Hawaii, for Defendant-Appellant.

## OPINION

DESAI, Circuit Judge:

A jury found Luis Miguel Castro Alavez ("Castro Alavez") guilty of one count of attempted possession with intent to distribute 500 grams of a mixture containing methamphetamine and one count of conspiracy to possess 500 grams of a mixture containing methamphetamine, both in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii). Castro Alavez appeals on two grounds.

First, he argues that his conviction and sentence for attempted possession of a specific drug type and quantity should be reversed under *United States v. Hunt*, 656 F.3d 906 (9th Cir. 2011), because the district court improperly instructed the jury that "the government does not have to prove that [Castro Alavez] knew that the controlled substance was methamphetamine or knew the quantity of methamphetamine." We agree in part. To impose the heightened penalty prescribed by § 841(b)(1)(A)(viii), the government must prove that Castro Alavez *intended* to possess 500 grams of a methamphetamine mixture. On the facts of this case, the district court's erroneous jury instruction was not harmless. We therefore vacate Castro Alavez's sentence for attempted possession of a controlled substance, but not his conviction.

Second, Castro Alavez contends that his attempt conviction and conspiracy conviction should be vacated because the district court improperly admitted religious images and expert testimony about "narco saints." While the expert testimony did not satisfy Federal Rule of Evidence 702, we nonetheless hold that the district court's error in

admitting this evidence was harmless. We thus affirm Castro Alavez's convictions.

## BACKGROUND

Castro Alavez, a native and citizen of Mexico, entered the United States in 2017 and lived in California until 2023. On June 15, 2023, Castro Alavez traveled to Hilo, Hawaii and rented a studio apartment from Diana Machado. Castro Alavez's vacation rental was on the same property as Machado's residence.

On June 28, 2023, the postal service delivered a package addressed to "Marco Alavez" to Machado's residence. Machado did not recognize the name on the package and became suspicious of its contents. Shortly after, Castro Alavez went to Machado's residence, presumably to look for the package. When Machado opened the door, Castro Alavez saw the package sitting on her table and pointed at it saying, "Mine, mine." Machado responded that the package belonged to her daughter. Castro Alavez left briefly but returned with tracking information indicating that he was expecting a package and asked whether she received it. Machado told him that she did not receive his package but would let him know if she did.

After he left, Machado opened the package and discovered a substance that felt like "rock salt." Suspecting that the substance could be drugs, Machado took the package to the police station and gave it to Special Agent Ryan Faulkner ("Agent Faulkner") of Homeland Security Investigations. Agent Faulkner obtained a search warrant and tested the package for narcotics, which revealed 4,970.92 grams of a mixture or substance containing a detectable amount of methamphetamine.

Police arrested Castro Alavez, and Agent Faulkner interviewed him at the police station. In the interview, Castro Alavez explained that he was hired by an unknown man at a nightclub in Riverside, California, who claimed he could help Castro Alavez get out of poverty if Castro Alavez agreed to pick up an unspecified item and give it to another individual. The job also required Castro Alavez to deposit money into a designated bank account. The man assured Castro Alavez that he would not be doing anything wrong but warned that, if Castro Alavez agreed to the work, there would be "no going back" and that if Castro Alavez pulled "a fast one," Castro Alavez and his family would be in danger.

Castro Alavez accepted the job and was sent to Hawaii. There, an unknown man gave Castro Alavez $8,000 to $10,000 and instructed him to wire the money to a bank account in Mexico. Castro Alavez told Agent Faulkner that he knew the money was drug money but felt that he was in too deep.

Castro Alavez moved into Machado's vacation rental in Hawaii and gave Machado's address to the people who recruited him. Castro Alavez explained to Agent Faulkner that he was instructed to retrieve a delivery at the vacation rental and to give it to an individual who would come to pick it up. The same morning the package arrived at Machado's residence, Castro Alavez received a call notifying him that the package would arrive soon. Castro Alavez stated in his interview that he knew the package likely contained drugs but did not know the type or quantity of drugs inside.

Castro Alavez also consented to a search of his two cell phones, his shoulder bag, and the vacation rental. And he shared with Agent Faulkner the location of receipts for

several wire transfers to Mexico, which investigators found during their search of the vacation rental.

Officers also found messages on Castro Alavez's cell phones instructing him to wire large amounts of U.S. currency to Mexico and to conceal money inside chocolate boxes before sending the boxes through the postal service. In addition, they discovered two drawings from Castro Alavez's shoulder bag, depicting Jesus Malverde and Santa Muerte, Mexican patron saints. Castro Alavez explained that the people who recruited him gave him the Jesus Malverde drawing in California and that the saint "helps the poor."

The government charged Castro Alavez with: (1) conspiracy to distribute and possess with intent to distribute 500 grams of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846 (count one); and (2) attempted possession with intent to distribute 500 grams of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846 (count two). At trial, the district court gave the following jury instruction for attempted possession over Castro Alavez's objection:

> If you find the defendant guilty of [attempted possession of a controlled substance], you are then to determine whether the government proved beyond a reasonable doubt that the controlled substance involved in the offense was 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers. Your determination of weight must not include the weight of any

packaging material. Your decision as to type of drug and weight must be unanimous.

The government does not have to prove that the defendant knew that the controlled substance was methamphetamine or knew the quantity of methamphetamine.

The jury convicted Castro Alavez on both counts. The district court sentenced him to concurrent 120-month prison terms on each count, followed by five years of supervised release. Castro Alavez timely appeals.

## STANDARD OF REVIEW

We review "de novo whether the jury instructions accurately define the elements of a statutory offense." *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000). While we ordinarily review a district court's evidentiary rulings for an abuse of discretion, *United States v. Shryock*, 342 F.3d 948, 981 (9th Cir. 2003), we review unpreserved objections for plain error, *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1006 (9th Cir. 2020).

## DISCUSSION

**I.  The government must prove a defendant's intent to possess the specified drug type and quantity to impose an increased penalty based on the defendant's attempted possession of a particular type and quantity of controlled substance**.

21 U.S.C. § 841(a) makes it unlawful for a person to "knowingly or intentionally" possess with the intent to distribute a controlled substance. Section 841(b)(1) sets out separate and increasing penalties depending on the type and quantity of the controlled substance. Relevant here,

§ 841(b)(1)(A)(viii) imposes a mandatory minimum sentence of ten years imprisonment if the offense involves "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." Section 846 provides that "[a]ny person who attempts or conspires to commit any offense" under § 841(a) "shall be subject to the same penalties as those prescribed for the offense."

The Sixth Amendment and Due Process Clause "require[] that each element of a crime be proved to the jury beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 104 (2013). "[A]ny 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed'"—such as drug type and quantity under § 841(b)(1)—constitute "elements of the crime" that the government must prove to the jury beyond a reasonable doubt. *Id.* at 111 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). We applied these principles in *Hunt* and held that, to impose a heightened penalty under § 841(b)(1) based on a defendant's attempted possession of a particular type and quantity of controlled substance, the government must prove that the defendant intended to possess the specified drug type and quantity. 656 F.3d at 913.

Castro Alavez argues that we must vacate his sentence under *Hunt*. We agree.

## A. *Hunt* controls our analysis.

In *Hunt*, after police intercepted a package and discovered that it contained about a kilogram of cocaine, the government charged the defendant with attempted possession of 500 grams or more of a mixture containing cocaine. *Id.* at 908–09. The defendant pleaded guilty without a plea agreement to attempted possession of a controlled substance but denied knowing the specific amount or type of

drug. *Id.* at 909–10. The district court sentenced him to 15 years in prison for attempting to possess cocaine in violation of §§ 846 and 841(b)(1)(C), a penalty provision that increases the statutory maximum sentence from a one-year term of imprisonment to a 20-year term for offenses involving specified drugs, including cocaine. *Id.* at 908, 910–11, 913, 916; *compare* 21 U.S.C. § 841(b)(1)(C) *with* § 841(b)(3).

We held that because the drug type "support[ed] an increase in the maximum statutory sentence [the defendant] faced," it was an element of the crime the government must prove beyond a reasonable doubt. *Hunt*, 656 F.3d at 912–13. Although the defendant admitted that he intended to possess a controlled substance, he did not admit to "attempt[ing] to possess cocaine." *Id.* The facts to which the defendant admitted in his guilty plea were thus insufficient to support a sentence under § 841(b)(1)(C). *Id.* at 913. Without "an explicit admission" or proof of intent, the drug type "could not be used to support an increase in the maximum statutory sentence." *Id.* at 912–13.

We rejected the government's contention that it need only prove the defendant "'knowingly' attempted to possess cocaine." *Id.* at 912. "While knowing possession is an element of the completed offense of possession with intent to distribute, attempted possession requires *proof of intent*, not knowledge." *Id.* (citations omitted); *see also United States v. Gracidas-Ulibarry*, 231 F.3d at 1188, 1196 (9th Cir. 2000) (en banc) (explaining that "'purpose' corresponds to the concept of specific intent, while 'knowledge' corresponds to general intent"). Thus, to obtain a sentence under § 841(b)(1)(C) for attempted possession of cocaine, "the government needed to prove that [the defendant] intended to possess cocaine." *Hunt*, 656 F.3d at 912. And

because the government failed to do so, we vacated the sentence. *Id.* at 916–17.

**B.** ***Hunt*** **is buttressed by our precedent holding that criminal attempt requires specific intent even when the underlying crime does not.**

We explored the mens rea required for criminal attempt in *Gracidas-Ulibarry*. There, we considered what level of intent the government must prove to convict a defendant of attempted illegal reentry under § 1326, when the underlying offense required a showing only of general intent and the statute did not otherwise specify an intent requirement. 231 F.3d at 1190.

Our starting point was the common law, which defines attempt as "the specific intent to engage in criminal conduct and an overt act which is a substantial step towards committing the crime." *Id.* at 1192 (citation modified). This "accepted common law definition" underlies our rule that "Congress' use of the term 'attempts' in a criminal statute manifest[s] a requirement of specific intent to commit the crime attempted, even when the statute d[oes] not contain an explicit intent requirement." *Id.* (citing *United States v. Hadley*, 918 F.2d 848, 853 (9th Cir. 1990) and *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir. 1990)); *see also Neder v. United States*, 527 U.S. 1, 21 (1999) (holding that when a term has a settled common law meaning, "a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning" (citation modified)).

By requiring specific intent for attempt crimes, we "resolve the uncertainty [over] whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct." *Gracidas-Ulibarry*, 231 F.3d at 1193.

And such "uncertainty is not present when the defendant has completed the underlying crime, because the completed act is itself culpable conduct." *Id.* Thus, we held that attempted illegal reentry requires proof that the noncitizen "had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General." *Id.* at 1196. This is true even though the substantive offense— illegal reentry—does not require either willfulness or an unlawful intent. *Id.* at 1194–95.

Our conclusion in *Gracidas-Ulibarry* was not exceptional. Years earlier, we required the government to prove a higher mens rea for attempt than for substantive offenses. *See, e.g.*, *United States v. Darby*, 857 F.2d 623, 626 (9th Cir. 1988) (holding that attempted bank robbery requires a specific intent to rob a bank, even though bank robbery is a general intent crime); *Sneezer*, 900 F.2d at 179 (holding that attempted sexual abuse under 18 U.S.C. § 2242 required a specific intent to commit the crime even though § 2242 "itself d[id] not appear to include any element of specific intent"). And we have continued to require specific intent for attempt crimes since *Gracidas-Ulibarry*. *See, e.g.*, *United States v. Ramirez-Martinez*, 273 F.3d 903, 914 (9th Cir. 2001) (holding that attempted unlawful transportation of noncitizens requires a "purpose, *i.e.,* the conscious desire, to transport an undocumented [noncitizen]," even though "[a]ctual (completed) transporting" requires only that the defendant act with "reckless disregard" of the noncitizen's status (citation modified)), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc).

In short, even if a substantive offense lacks an intent requirement, an *attempt* to commit that offense requires specific intent. *Hunt* applied this longstanding mens rea

requirement to attempt under § 841(b)(1), and it controls here. The district court thus erred by instructing the jury that the government need not prove that Castro Alavez intended to possess 500 grams or more of a methamphetamine mixture. This error was not harmless.[1] We thus vacate Castro Alavez's sentence for attempted possession of a controlled substance and remand for resentencing.[2]

---

[1] The government does not argue harmlessness and therefore forfeits the issue. *United States v. Rodriguez*, 880 F.3d 1151, 1163 (9th Cir. 2018). But even so, the erroneous instructions relieved the government of its burden to prove an element of the offense. *See Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered." (citation modified)). And this error likely affected the outcome because there is scant evidence suggesting Castro Alavez knew the type and quantity of drugs involved. *See id.* at 811–12.

[2] To the extent Castro Alavez argues that the district court's instructional error warrants vacatur of his conviction for attempted possession of a controlled substance, we disagree. Drug type and quantity are elements of the "aggravated crime" created by § 841(b)(1)(A)(viii), but they are not elements of the "core crime" set forth in §§ 841(a) and 846. *See Alleyne*, 570 U.S. at 113. The district court properly instructed the jury on the core crime of attempted possession of a controlled substance, and the jury found Castro Alavez guilty of this offense. Thus, Castro Alavez is entitled only to resentencing. *See United States v. Toliver*, 351 F.3d 423, 431 (9th Cir. 2003) (holding that the government's failure to prove drug type and quantity did not entitle the defendants to a judgment of acquittal and that the district court was instead "restricted in the maximum sentence that it could impose"), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296 (2004); *see also Alleyne*, 570 U.S. at 114–18 (vacating the defendant's sentence for the aggravated crime of brandishing a firearm and remanding "for resentencing consistent with the jury's verdict" of guilty as to the core crime of using or carrying a firearm); *United States v. Delgado-Marrero*, 744 F.3d 167, 192 (1st Cir. 2014) (collecting cases establishing that a defendant with a

## II.  We decline to extend our separate line of cases involving criminal conspiracy to this context.

To avoid *Hunt*, the government argues that *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc) overruled it. But *Collazo*—which addressed the crime of conspiracy—did not expressly or impliedly overrule *Hunt* and, in fact, did not involve the same crime. Still, the government insists that *Collazo* controls because its reasoning is "clearly irreconcilable" with *Hunt*.

"[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, . . . [we are] bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). But we remain "bound by our prior precedent if it can be reasonably harmonized with the intervening [higher] authority." *Lair v. Bullock*, 697 F.3d 1200, 1206 (9th Cir. 2012) (citation modified).

At bottom, *Hunt* controls here unless the government can show that *Hunt*'s reasoning is "clearly irreconcilable" with *Collazo*. The government does not meet this "high standard." *Id.* at 1207 (citation modified).

---

successful *Apprendi* or *Alleyne* claim "is not entitled to a new trial, but rather is only entitled to resentencing").

**A.** ***Collazo*** **relied on "well-established principles of conspiracy law," which require no heightened mens rea beyond what the underlying crime requires.**

In *Collazo*, a jury convicted the defendants of conspiracy to distribute 500 grams of a mixture containing methamphetamine in violation of 21 U.S.C. § 846, and the district court sentenced defendants under § 841(b)(1)(A)(viii). 984 F.3d at 1317–18. The district court instructed the jury to determine "whether the government proved beyond a reasonable doubt that the amount of methamphetamine that was reasonably foreseeable to [the defendants] or fell within the scope of [their] particular agreement equaled or exceeded . . . 500 grams of a mixture containing methamphetamine." *Id.* at 1317.

We held that this jury instruction was incorrect because the conspiracy crime did not require the defendants' knowledge of drug type and quantity. *Id.* at 1333. Relying on "well-established principles of conspiracy law," we explained that a conspiracy conviction requires the government to prove "(1) the defendant agreed with another person that some member of the conspiracy would commit the relevant underlying offense," and "(2) the defendant had the *requisite intent necessary for a conviction of the underlying offense.*" *Id.* at 1318, 1320 (emphasis added). Turning to the underlying offense, we observed that § 841(a) makes it unlawful for any person to knowingly or intentionally distribute "'a controlled substance,' which is an unspecified substance listed on the federal drug schedules." *Id.* at 1325 (citation modified).

Although "the facts of drug type and quantity under § 841(b) constitute elements or ingredients of the crime

because they affect the penalty that can be imposed on a defendant," *id.* at 1322, we concluded that there was "no natural or ordinary way to read the intent requirement in § 841(a)(1) as modifying the drug types and quantities in § 841(b)," *id.* at 1326. Thus, "[b]ecause the government need not prove that a defendant knew (or had an intent) with respect to a specific drug type and quantity in order to secure a conviction under § 841(a) . . . , the government likewise need not prove such knowledge or intent for" a conspiracy conviction under § 846. *Id.* at 1320 n.10, 1329.

We reached this conclusion because—unlike attempt—conspiracy requires no greater mens rea than the underlying offense. *See id.* at 1329–33. Relying on *United States v. Feola*, 420 U.S. 671 (1975), we explained that "where an element of the underlying substantive offense does not include an intent requirement, the same will be true for a conspiracy to commit that offense, unless one of the policies behind the imposition of conspiratorial liability is not served by having the same intent." *Id.* at 1330 (citation modified). For § 846, "the offense of conspiracy to distribute a controlled substance is as 'opprobrious' and dangerous to society as the act of the individual drug dealer who actually distributes the controlled substance," and so imposing an additional burden on the government to prove the conspirator's knowledge of drug type and quantity would serve "no apparent purpose." *Id.* at 1332–33 (quoting *Feola*, 420 U.S. at 693, 694).

Indeed, our court has repeatedly upheld convictions for conspiracy based only on the mens rea required for the underlying crime. In *United States v. Karr*, 742 F.2d 493 (9th Cir. 1984), we held that the defendant could be found guilty of conspiring to receive stolen explosives even though he did not know the materials were stolen, because the underlying

offense required only that an individual have "reasonable cause to believe" the materials were stolen. *Id.* at 497 (citation modified). So too in *United States v. Thomas*, 887 F.2d 1341 (9th Cir. 1989), where we upheld a conviction for conspiracy to transport, receive, and acquire elk in interstate commerce in violation of state law based only on proof that the defendant "should have known" the conduct violated state law. *Id.* at 1346–47. And in *United States v. Baker*, 63 F.3d 1478 (9th Cir. 1995), we held that "the defendants c[ould] be guilty of conspiring to violate RICO even if they were not aware their actions were illegal." *Id.* at 1493. This was because "establishing a defendant's guilt of conspiracy to commit a substantive crime requires proof of the mens rea essential for conviction of the substantive offense itself. *No greater or different intent is necessary*." *Id.* (emphasis added) (citation omitted).

**B.  *Collazo*'s reasoning cannot be grafted onto attempted possession.**

*Hunt*'s reasoning is not clearly irreconcilable with *Collazo*. *Collazo* rests on the principle that conspiracy requires no greater level of intent than the underlying crime. But that principle does not apply to attempt. While conspiracy demands "proof of the *mens rea* essential for conviction of the substantive offense itself," *Baker*, 63 F.3d at 1493, attempt requires specific intent even when the underlying crime does not, *see Gracidas-Ulibarry*, 231 F.3d at 1193. This distinction makes sense. We require specific intent for attempt to ensure that a defendant's "purpose was indeed to engage in criminal, rather than innocent, conduct." *Id.* at 1192–93. But the same rationale does not apply to conspiracy, because "[t]he agreement itself is the offense." *Collazo*, 984 F.3d at 1319. Thus, because the mens rea for attempt differs from the mens rea for conspiracy, the

government fails to show that *Hunt* is irreconcilable with *Collazo*'s conspiracy-specific reasoning.

The government also argues that it is illogical to apply *Collazo* to conspiracy to possess but not attempted possession, because both crimes are inchoate offenses covered by the same statute. To be sure, applying *Hunt* and *Collazo* yields different outcomes for Castro Alavez's conspiracy conviction and his attempted possession conviction. But there is nothing illogical about this result. At most, the government highlights that there might be some tension between the two cases. Even so, mere tension is not a valid basis to disregard precedent. *Lair*, 697 F.3d at 1207 ("It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." (citation modified)).

In sum, *Collazo* does not apply here, and we are bound by *Hunt*.

## III. The district court improperly allowed Detective Kelly Moniz to testify about the significance of Jesus Malverde and Santa Muerte, but the error was harmless.

At trial, the government called Detective Kelly Moniz as an expert witness on drug trafficking methods and valuation. Detective Moniz testified that the drawings seized from Castro Alavez's bag depicted Jesus Malverde and Santa Muerte, and that these are Mexican patron saints that drug traffickers pray to for protection, wealth, abundance, and

silence. Castro Alavez argues the district court plainly erred by admitting this testimony.[3]

Under plain error review, Castro Alavez must show: (1) an error; (2) that is plain; and (3) that affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732–36 (1993). "If these conditions are met, we may exercise our discretion to notice the forfeited error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mendoza-Paz*, 286 F.3d 1104, 1113 (9th Cir. 2002) (citation modified).

The district court's admission of Detective Moniz's testimony plainly contravened Federal Rule of Evidence 702, but Castro Alavez fails to show that the error affected his substantial rights.

## A.  The district court abandoned its gatekeeping role.

Rule 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to give opinion testimony if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "[B]efore admitting expert testimony, the district court must perform a gatekeeping role to ensure that the testimony is both relevant and reliable." *United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020) (citation modified).

The reliability of an expert's testimony "is the lynchpin." *Id.* at 898. The reliability requirement ensures "that an

---

[3] Castro Alavez concedes that he forfeited his objection to Detective Moniz's testimony, and thus plain error review applies. *See Tan Lam*, 976 F.3d at 1006.

expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). When law enforcement officers are offered as experts, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind [the testimony]." *Mendoza-Paz*, 286 F.3d at 1112 (citation modified).

Because the reliability analysis "is a malleable one tied to the facts of each case," district courts have "broad latitude" to decide how to test an expert's reliability. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) (citation modified). But they "do not have discretion to abandon the gatekeeping function altogether." *Id.* (citation modified). Here, the district court neglected its gatekeeping role when it allowed Detective Moniz to testify about religious iconography purportedly associated with drug trafficking.

Detective Moniz has twenty years of experience as a law enforcement officer and has investigated more than 300 narcotics-related cases. He no doubt has sufficient knowledge and experience to qualify as an expert in drug valuation and drug trafficking methods. But that expertise, alone, does not qualify him to testify about every matter remotely related to drug trafficking. *See Valencia-Lopez*, 971 F.3d at 900 ("[The expert's] qualifications and experience are relevant, and indeed necessary. But they cannot establish the reliability and thus the admissibility of the expert testimony at issue.").

The government points to slim evidence that Detective Moniz knows anything about religious iconography

associated with drug trafficking. His experience is limited to one four-hour class in 2010 and another in 2022. He never investigated or researched the subject; nor had he served as an expert on the subject before this case. Across hundreds of investigations, Detective Moniz has only encountered Jesus Malverde iconography one other time. The government offers no other basis to support the reliability of Detective Moniz's testimony.

These qualifications fall short of Rule 702's demanding standard. *Cf. Mendoza-Paz*, 286 F.3d at 1112–13 (finding that the expert was qualified to testify about the value of the seized drugs because the expert "had investigated illegal narcotics trafficking for eleven years" and had "obtained experience in the value of illegal narcotics from intelligence databases" and investigations he conducted). Detective Moniz's minimal exposure to drug-related religious iconography rendered his opinion unreliable. *See Valencia-Lopez*, 971 F.3d at 900. We thus hold that the district court erred by allowing him to testify on the subject.

## B. Detective Moniz's testimony did not affect Castro Alavez's substantial rights.

For an error to affect a defendant's substantial rights, "the error must have been prejudicial," which means "[i]t must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. Castro Alavez fails to demonstrate a reasonable probability that absent Detective Moniz's testimony, the jury would have returned a verdict of not guilty on the conspiracy charge. *See id.* (explaining that the defendant has the burden to show prejudice); *United States v. Rangel-Guzman*, 752 F.3d 1222, 1224 (9th Cir. 2014).

The evidence incriminating Castro Alavez was extensive. Besides the circumstantial evidence implicating him in drug trafficking, Castro Alavez admitted that he was involved in drug trafficking and that he knew the package that arrived at Machado's residence likely contained drugs. Because Castro Alavez fails to show a reasonable probability that Detective Moniz's testimony affected the jury's verdict, we affirm his convictions.[4]

## CONCLUSION

We vacate Castro Alavez's sentence for attempted possession with the intent to distribute a controlled substance but affirm his convictions for attempted possession and conspiracy to possess a controlled substance. We remand for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

[4] Castro Alavez also argues that the district court abused its discretion by admitting the drawings that depicted Jesus Malverde and Santa Muerte. We need not reach this issue because we are persuaded that any error is harmless for the same reasons that Detective Moniz's testimony did not affect Castro Alavez's substantial rights. *See Olano*, 507 U.S. at 734 (explaining that the plain error standard "normally requires the same kind of inquiry" as the "harmless error" standard except that the burden of persuasion is on the defendant instead of the government).