**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARIO RUVALCABA-GARCIA,
*Defendant-Appellant.*

No. 17-50288

D.C. No.
3:16-cr-02363-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, Chief District Judge, Presiding

Argued and Submitted April 11, 2019
Pasadena, California

Filed May 10, 2019

Before: Susan P. Graber and Jay S. Bybee, Circuit Judges,
and M. Douglas Harpool,[*] District Judge.

Per Curiam Opinion

---

[*] The Honorable M. Douglas Harpool, United States District Judge for
the Western District of Missouri, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed a conviction for illegally reentering the United States after having been removed, in a case in which the defendant argued that the district court abused its discretion by admitting expert testimony that a fingerprint taken during the underlying removal proceedings belonged to the defendant.

The panel held that the district court abused its discretion by failing to make an explicit reliability finding before admitting the fingerprint analyst's expert testimony, as required under *Daubert v. Merrill Dow Pharm, Inc.*, 509 U.S. 579 (1993), and Fed. R. Evid. 702, but that the error was harmless because the record is sufficient to determine that the testimony had a reliable basis in the knowledge and experience of the relevant discipline.

The panel addressed remaining arguments in an accompanying memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kara Hartzler (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Zachary J. Howe (argued) and Nicole Ries Fox, Assistant United States Attorneys; Helen H. Hong, Chief, Appellate Section; Adam L. Braverman, United States Attorney; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

Mario Ruvalcaba-Garcia was convicted of violating 8 U.S.C. § 1326(a) for illegally reentering the United States after having been removed. His conviction was predicated on a removal order from 2015, and his defense at trial was that he was not the person removed in 2015. To prove he was that person, the government called as an expert witness a fingerprint analyst who testified that a fingerprint taken during the 2015 removal proceedings belonged to Ruvalcaba.

Ruvalcaba argues on appeal that the district court abused its discretion by admitting the expert's testimony without first finding it "relevant" and "reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see* Fed. R. Evid. 702. We agree that the district court's "failure to make these gateway determinations was an abuse of discretion." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014) (en banc). But because "the record is sufficient to determine [that the] expert testimony [was]

relevant and reliable," *id.*, we conclude that the error was harmless and affirm.[1]

I

Ruvalcaba is a native and citizen of Mexico who does not have legal authorization to enter or remain in the United States. In September 2016, he was apprehended by Border Patrol agents a few miles north of the port of entry at Tecate, California. He was arrested and charged with illegally reentering the United States after having been removed, in violation of 8 U.S.C. § 1326(a), a crime that requires the government to prove "that the defendant 'left the United States under order of exclusion, deportation, or removal, and then illegally reentered.'" *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011)).

The government predicated the illegal-reentry charge on an expedited removal order from June 2015. *See* 8 U.S.C. § 1225(b). Although the documents from the 2015 removal proceedings identify the person removed as "Mario Ruvalcaba-Garcia AKA Macias-Garcia, Juan," the documents are all signed with the name "Juan Macias-Garcia" or the initials "JMG." Ruvalcaba's primary defense to the illegal-reentry charge was that the government could not prove that he was the person removed in 2015. Among the 2015 removal documents, however, was a Verification of Removal form that contained not only a signature but also a photograph and a fingerprint of the removed individual.

---

[1] We address Ruvalcaba's remaining arguments in an accompanying memorandum disposition.

Before trial, the government produced an expert report by David Beers, a fingerprint analyst, who would testify that the fingerprint on the 2015 Verification of Removal matched a fingerprint he had taken from Ruvalcaba. At a pretrial motions hearing, Ruvalcaba requested an opportunity to challenge the admissibility of Beers's expert testimony. Although the district court had previously admitted Beers as an expert in several other cases, Ruvalcaba wanted to take "a crack at it." The court agreed and explained that, after the government laid the foundation for Beers to testify as an expert, Ruvalcaba would be permitted to question him about "the foundation of his expertise, before we get to his ultimate opinion, if we do."

The case proceeded to trial. The government introduced into evidence a copy of the 2015 Verification of Removal, but the quality of the copy was quite poor and the photograph and fingerprint were nearly indiscernible. The government then called Beers to testify about his fingerprint analysis. The parties questioned Beers about his qualifications and methodology, with Ruvalcaba noting at the outset that he was "doing this with an eye towards Daubert." Beers testified that he had worked as an FBI fingerprint technician and instructor for 33 years, reviewing more than 300,000 fingerprints and testifying as an expert more than 200 times. He had never "not been qualified [in any proceeding] as an expert in fingerprints." He uses "the Henry system of classification and identification," which he described as the prevailing fingerprinting methodology that analyzes fingerprints according to unique points of identification. On cross-examination, Beers testified that he had not taken continuing education courses in fingerprint analysis, and he confirmed that was he not a member of the International Association for Identification ("IAI") or the Scientific Working Group on

Friction Ridge Analysis, Study, and Technology ("SWGFAST"). He also acknowledged that he did not strictly follow the "ACE-V" method of fingerprint analysis, which is endorsed by SWGFAST and stands for analysis, comparison, evaluation, and verification. *See United States v. Herrera*, 704 F.3d 480, 484–85 (7th Cir. 2013) (describing the ACE-V method). Although Beers followed the "ACE" part of the method, he did not have another fingerprint technician independently verify his conclusions. Nor did he know how many points of identification he used to match Ruvalcaba's fingerprint.

At the conclusion of his cross-examination, Ruvalcaba "object[ed] to the admission of Mr. Beers as an expert in this case." After some additional questioning, the court overruled Ruvalcaba's objection, stating: "I find that there's a basis for Mr. Beers to offer an opinion on the basis of his fingerprint comparison in this case." At the same time, the court instructed the jury that Beers's testimony should "be judged like other testimony" and given "as much weight as you think it deserves, taking into consideration the witness' education, the witness' experience, the reasons given for the opinion and all of the other evidence in this case."

Beers went on to testify that, in his opinion, the fingerprint he took from Ruvalcaba matched the fingerprint on the 2015 Verification of Removal. He acknowledged, however, that the copy presented in court was "so diminished" that he "wouldn't be able to make an identification off of that." The government also presented additional evidence from other witnesses but stressed during closing arguments that Beers was "important because he tells you that . . . the fingerprint on the document is the

defendant's fingerprint." The jury was unable to reach a verdict, and the court declared a mistrial.

Ruvalcaba was retried a week later. This time, Beers annotated the fingerprint on the 2015 Verification of Removal to identify six matching points of identification, and the government made an enlarged copy of the annotated fingerprint for Beers to use while he testified. As in the first trial, the government first questioned Beers about his qualifications and methodology. After eliciting testimony that largely tracked that presented in the first trial, the government "move[d] to have Mr. Beers qualified as an expert fingerprint technician." The court responded, "That's a determination for the jury." Ruvalcaba then cross-examined Beers, again establishing that he was not a member of IAI or SWGFAST and that, although he followed the "ACE" part of the ACE-V method—which is simply "a verbalization of what fingerprint technicians have been doing for over a hundred years"—he did not have another analyst independently verify his conclusions. Once Ruvalcaba finished his cross-examination, the government again "move[d] to qualify [Beers] as an expert," and the court responded, "Again, that's an issue for the jury." Ruvalcaba then "object[ed] to the qualifying" of Beers "as an expert." The court overruled the objection and instructed the jury: "[I]t's up to you to decide whether the witness by virtue of his experience and training is qualified to give opinions and give his testimony whatever weight you think it deserves in light of that testimony, the reasons given for the opinion, all other evidence in this case."

Beers then testified about his fingerprint analysis in this case, now with the help of the annotated and enlarged fingerprint from the 2015 Verification of Removal. After the

government presented additional witnesses and evidence, the jury returned a guilty verdict. The district court sentenced Ruvalcaba to five years of probation.

## II

On appeal, Ruvalcaba challenges the admission of Beers's expert testimony, arguing that the district court impermissibly abdicated its "gatekeeping" role under *Daubert* and Federal Rule of Evidence 702. We review the district court's decision to admit expert testimony for an abuse of discretion. *United States v. Flores*, 901 F.3d 1150, 1155–56 (9th Cir. 2018). If the district court abused its discretion, we will reverse if the error was not harmless. *United States v. Christian*, 749 F.3d 806, 813 (9th Cir. 2014) (citing *Barabin*, 740 F.3d at 460, 466–67).[2]

## A

Before admitting expert testimony into evidence, the district court must perform a "gatekeeping role" of ensuring that the testimony is both "relevant" and "reliable" under Rule 702.[3] *Daubert*, 509 U.S. at 597. "Relevancy simply

---

[2] The government contends that Ruvalcaba's challenge to the admission of Beers's expert testimony may be reviewed only for plain error because he did not specifically raise a "gatekeeping" objection below. We decline to reach that issue because Ruvalcaba's challenge fails even under harmless error review.

[3] Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

requires that 'the evidence logically advance a material aspect of the party's case.'" *Barabin*, 740 F.3d at 463 (citation and internal alterations omitted). Ruvalcaba does not dispute the relevancy of Beers's testimony, as it connected Ruvalcaba to the person removed in 2015.

The issue here is "reliability," which requires that the expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). The district court must assess whether "the reasoning or methodology underlying the testimony is scientifically valid" and "properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 592–93, with the goal of ensuring that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," *Kumho Tire*, 526 U.S. at 152. "The test 'is not the correctness of the expert's conclusions but the soundness of his methodology,' and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

---

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The reliability analysis is "a malleable one tied to the facts of each case," and "district courts are vested with 'broad latitude' to 'decide *how* to test an expert's reliability' and '*whether or not* an expert's relevant testimony is reliable.'" *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922–23 (9th Cir. 2017) (quoting *Kumho Tire*, 526 U.S. at 152–53). Although *Daubert* identifies several factors that may be used for evaluating the reliability of an expert—whether the scientific theory or technique has been tested, peer reviewed, identified as having a particular rate of error, and generally accepted in the scientific community, *see* 509 U.S. at 592–94—district courts are not required to consider all (or even any) of these factors, nor are they required to hold a "*Daubert* hearing." *Barabin*, 740 F.3d at 463–64.

Nevertheless, district courts do not have "discretion to abandon the gatekeeping function" altogether, *Kumho Tire*, 526 U.S. at 158–59 (Scalia, J., concurring), for "Rule 702 'clearly contemplates *some* degree of regulation of the subjects and theories about which an expert may testify,'" *Barabin*, 740 F.3d at 464 (quoting *Daubert*, 509 U.S. at 589). We have thus held that a district court abuses its discretion when it either "abdicate[s] its role as gatekeeper" by failing to assess "the scientific validity or methodology of [an expert's] proposed testimony," or "delegate[s] that role to the jury" by "admitting the expert testimony without first finding it to be relevant and reliable." *Id.*; *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) (holding that the admission of an expert's testimony without making "any findings regarding the efficacy of [the expert's] opinions constituted an abdication of the district court's gatekeeping role, and necessarily an abuse of discretion").

Here, the district court abused its discretion by failing to make any findings regarding the reliability of Beers's expert testimony and instead delegating that issue to the jury. Indeed, the district court made this error three times during Ruvalcaba's second trial. After the government conducted an initial voir dire of Beers and "move[d] to have [him] qualified as an expert fingerprint technician," the court responded, "That's a determination for the jury." After Ruvalcaba cross-examined Beers and the government again "move[d] to qualify him as an expert," the court responded, "Again, that's an issue for the jury." And when Ruvalcaba "object[ed] to the qualifying [of Beers] as an expert," the court overruled the objection and told the jury that it was up to them "to decide whether the witness by virtue of his experience and training is qualified to give opinions."

The government argues that the district court fulfilled its gatekeeping duty at Ruvalcaba's first trial by overruling Ruvalcaba's objection to Beers's testimony and declaring that "there's a basis for Mr. Beers to offer an opinion on the basis of his fingerprint comparison in this case." But the district court's ruling at most "suggests an implicit finding of reliability," which is not sufficient. *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007). To satisfy its "'gatekeeping' duty" under *Daubert*, the court must "make an explicit reliability finding." *Id.* at 582–83 (quoting *Daubert*, 509 U.S. at 597); *cf., e.g.*, *Flores*, 901 F.3d at 1165 (affirming the admission of Beers as an expert where the district court "ma[de] an explicit finding regarding the scientific validity of Beers's testimony"). The district court's failure to make an explicit reliability finding before admitting Beers's expert testimony in this case constituted an abuse of discretion.

B

Because the district court abused its discretion by admitting Beers's testimony without having performed its gatekeeping function, we must next determine whether the error was harmless. *Christian*, 749 F.3d at 813. The government bears the burden to show harmlessness, a burden it can sustain in this context by showing either that "it is more probable than not that the jury would have reached the same verdict even if the [expert testimony] had not been admitted," *Barabin*, 740 F.3d at 465 (citation omitted), or that the admitted "expert testimony [was] relevant and reliable" under *Daubert* based on "the record established by the district court," *id.* at 467.

Ruvalcaba contends that, under *Barabin*, we may not "consider in the first instance whether the expert's testimony was admissible under *Daubert*" and must instead remand for a new trial if the testimony may have impacted the verdict. That is incorrect. "Under *Barabin*, a new trial is warranted when evidence admitted through an erroneous analysis prejudices the opposing party but the record is too sparse to conduct a proper admissibility analysis and decide whether the admission itself was erroneous." *Christian*, 749 F.3d at 813 (citing *Barabin*, 740 F.3d at 466–67). When, however, "the record is sufficient to determine whether [the] expert testimony is relevant and reliable," *Barabin* makes clear that we "may make such findings" on appeal. 740 F.3d at 467; *see id.* (overruling *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003), "to the extent that it required that *Daubert* findings always be made by the district court"). And when the record shows that the expert's testimony "'satisfied the requirements for admission,'" we may conclude that the district court's failure

to make "an explicit finding of reliability was harmless." *Jawara*, 474 F.3d at 583 (internal alteration omitted) (quoting *United States v. Rahm*, 993 F.2d 1405, 1412 (9th Cir. 1993)); *see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997).

In this case, the record is sufficient for us to determine that Beers's testimony had "a reliable basis in the knowledge and experience of the relevant discipline." *Barabin*, 740 F.3d at 463 (quoting *Kumho Tire*, 526 U.S. at 149). Beers testified without contradiction that he had amassed 33 years of experience as a fingerprint technician and instructor with the FBI, analyzing more than 300,000 fingerprints and testifying as an expert in some 250 criminal cases, including in proceedings before this district judge. His testimony, moreover, was based on the Henry system, a methodology of fingerprint classification that "ha[s] been tested in the adversarial system for roughly a hundred years." *United States v. Calderon-Segura*, 512 F.3d 1104, 1109 (9th Cir. 2008). As we recently explained in another illegal-reentry case affirming the admission of Beers's testimony, his methodology "is far from junk science—it can be tested and peer reviewed and is generally accepted by the relevant scientific community." *Flores*, 901 F.3d at 1165.

To be sure, the fact that Beers has testified as an expert in other cases does not provide the "sole basis" for determining the reliability of his testimony in this case. *United States v. Alatorre*, 222 F.3d 1098, 1105 (9th Cir. 2000). Beers testified extensively on direct and cross-examination about the methodology he employed in this case, including describing the side-by-side comparison of the fingerprints in this case and the points of identification he found. The only evidence presented by Ruvalcaba to undermine the reliability

of Beers's testimony falls far short.  Although Ruvalcaba established during cross-examination that Beers did not belong to certain professional organizations or engage in continuing education, the absence of "specific credentials" does not necessarily render an expert "unfit to provide expert testimony."  *United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. 2010) (citation omitted).  Also unavailing is the fact that Beers did not strictly follow the ACE-V method, a widely validated method.  *See Herrera*, 704 F.3d at 484 (referring to ACE-V as "the standard method for determining whether two fingerprints are from the same person"); *United States v. Pena*, 586 F.3d 105, 110 (1st Cir. 2009) ("Numerous courts have found expert testimony on fingerprint identification based on the ACE-V method to be sufficiently reliable under *Daubert*.").  As Beers explained, he deviated from the ACE-V method only by not having another fingerprint analyst verify his conclusions in this case, and questions about the correctness of an expert's conclusions "are a matter of weight, not admissibility."  *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014); *see Daubert*, 509 U.S. at 595 ("The focus [of Rule 702] must be solely on principles and methodology, not on the conclusions that they generate.").  In any event, an expert may offer "testimony based on methodologies that differ from the standards that the federal government or fingerprinting trade organizations desire."  *Flores*, 901 F.3d at 1165 n.22.

Because the record demonstrates that Beers's testimony satisfied the admissibility requirements under *Daubert*, we conclude that the "lack of an explicit finding of reliability was harmless."  *Jawara*, 474 F.3d at 583.

### III

The district court abused its discretion in admitting Beers's expert testimony without first finding it relevant and reliable under *Daubert* and Rule 702. But because the record is sufficient for us to make that determination, the error was harmless. For these reasons and those given in the accompanying memorandum disposition, Ruvalcaba's conviction is **AFFIRMED**.