# Matter of J-G-T-, Respondent

*Decided September 25, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  In assessing whether to admit the testimony of a witness as an expert, an Immigration Judge should consider whether it is sufficiently relevant and reliable for the expert to offer an informed opinion, and if it is admitted, the Immigration Judge should then consider how much weight the testimony should receive.

(2)  In considering how much weight to give an expert's testimony, the Immigration Judge should assess how probative and persuasive the testimony is regarding key issues in dispute for which the testimony is being offered.

FOR RESPONDENT:  Christian Gabriel Andreu-von Euw, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Stephanie Groff, Assistant Legal Advisor; Monica Mubaraki, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, MULLANE, and CREPPY, Appellate Immigration Judges.

MALPHRUS, Appellate Immigration Judge:

In a decision dated November 17, 2017, an Immigration Judge granted the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(A) (2012).[1]  The Department of Homeland Security ("DHS") has appealed from that decision. The panel heard oral argument in this case.  The DHS's appeal will be sustained in part, and the record will be remanded to the Immigration Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who sought admission to the United States on May 26, 2011.  In August 2011, the DHS initiated removal proceedings, charging that the respondent is removable as an

---

[1]  The Immigration Judge did not address the respondent's request for withholding of removal or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988).

immigrant who had no valid entry document at the time of his arrival. In a hearing before the Immigration Judge, the respondent conceded removability and filed an application for asylum, claiming that he feared persecution from Iranian agents in Mexico.

The respondent claimed that after starting college in 2010, he began working with a group of students for one of his professors. This group was involved in an effort to gather evidence about the alleged activities of foreign governments to launch cyberattacks against the United States. Although most of the work involved transcribing secret recordings taken from the various embassies in Mexico, the respondent became more deeply involved with the project. At the behest of his professor, the respondent feigned a conversion to Islam, fostered a relationship with the Iranian Ambassador to Mexico, and secured an invitation from the Ambassador to attend a religious school in Iran.

In early 2011, the respondent traveled to Iran under the pretense of attending a religious school, but with the actual intent to develop additional relationships with Iranian officials and make clandestine recordings of Iran's suspected cyberwarfare efforts. The respondent attended the school, which he discovered was an indoctrination center for Latin American students operated by an Iranian cleric, who was believed to be the architect of the 1994 bombing of the Argentine Israelite Mutual Association building in Buenos Aries, Argentina. Eventually, he attracted unwanted attention, and the devices he used to secretly record the religious leaders at the school were discovered. The respondent was accused of being a spy. He feared for his life, went to the Mexican Embassy, and fled from Iran. Because the respondent believed that Iranian agents pursued him in Mexico and would continue to do so, he fled to the United States.

In support of his application, the respondent and his mother testified about his experiences in Iran and Mexico. In addition, the respondent presented the testimony of a witness to provide background knowledge and context for his claim. The witness is a national security consultant and analyst whose focus is on issues relating to Latin America, Iran, and transnational organized crime. The respondent's evidence also included news articles that referenced his activities in Iran.

In an oral decision, the Immigration Judge granted the respondent's application for asylum, finding that he established a well-founded fear of persecution on account of his political opinion.[2] He determined that the

---

[2] The Immigration Judge found that Iran's "opposition to the respondent" was because of his "attempt[] to investigate and invite admission of interest in possible politically motivated cyberattacks, . . . ultimately exposing a school program which appeared to have political goals beyond simply education regarding religion." Based on these findings, the

respondent and his mother were credible. The Immigration Judge specifically said that he gave "significant weight" to the witness's testimony that Iran would seek to punish the respondent for spying in Iran because "pro-Iranian regime actors," such as Hezbollah and Mexican drug cartels, would seek "to engage in potentially politically beneficial schemes, especially if there was an added layer of plausible deniability, but without always careful aforethought to the plan." The Immigration Judge also credited the witness's claim that the Mexican Government lacks the ability to protect the respondent from harm.

On appeal, the DHS does not dispute the respondent's credibility or the veracity of his claim.[3] Rather, it challenges the Immigration Judge's reliance on the witness's testimony and his conclusion that the respondent established a well-founded fear of persecution from Iran in Mexico. The DHS argues that because of concerns regarding this witness's expertise on the key issues in the case, the Immigration Judge erred in not qualifying him as an expert witness before considering his testimony. In addition, the DHS asserts that the Immigration Judge erred in giving greater weight to the witness's testimony than to other evidence contained in the record.

## II. ANALYSIS

An asylum applicant bears the burden of establishing eligibility for asylum. Section 208(b)(1)(B) of the Act; 8 C.F.R. § 1208.13(a) (2020). To meet this burden, the applicant must establish that he or she is a "refugee," or one who is unable or unwilling to return to the country of removal "because of persecution or a well-founded fear of persecution on

---

Immigration Judge held that the respondent's imputed political opinion would be "at least one central reason" for any future harm. Section 208(b)(1)(B)(i) of the Act. The DHS did not challenge the Immigration Judge's findings regarding political opinion in its supplemental brief or during oral argument. Given our disposition in this case and our decision to remand, we need not further consider this issue at this time.

The Immigration Judge also determined that the respondent did not establish eligibility for asylum based on his religion or his membership in a particular social group, namely the group of students working for the professor. The respondent filed a cross-appeal from the Immigration Judge's decision denying his request for asylum based on his membership in a particular social group, but he subsequently withdrew it.

[3] The DHS has also not challenged the Immigration Judge's conclusion that the respondent does not present a national security risk to the United States. During the hearing, the DHS submitted a report from the Federal Bureau of Investigation regarding the respondent, which stated that it could not rule out the possibility that he poses such a threat. However, the Immigration Judge found the respondent credible and specifically ruled that he does not present a national security risk.

account of race, religion, nationality, membership in a particular social group, or political opinion." Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (2018). In addition, the applicant must show that any past or future harm was or will be inflicted by government officials or private individuals the government was or is unable or unwilling to control. *See Matter of K-S-E-*, 27 I&N Dec. 818, 823 (BIA 2020); *see also Davila v. Barr*, 968 F.3d 1136, 1141 (9th Cir. 2020).

The two key substantive issues in dispute regarding the respondent's eligibility for asylum are (1) whether the Iranian Government has the ability to harm the respondent in Mexico, and (2) whether the Government of Mexico is unable or unwilling to protect the respondent from Iranian operatives.[4] The Immigration Judge relied extensively on the testimony of the respondent's witness to find that these elements were satisfied. However, we cannot discern from the record if the Immigration Judge's reliance on that testimony was based on a reasoned consideration. In this regard, it is unclear if the witness had the relevant expertise to opine on whether the Iranian Government is able to engage in extra-territorial assassination efforts in Mexico, and whether the Mexican Government has the ability and willingness to protect the respondent from Iranian operatives.

As an initial matter, the Immigration Judge stated that "there is no such thing as an expert witness" in immigration proceedings. However, the Immigration Judge relied extensively on the testimony of the respondent's witness, presumably as a lay witness, to find that the respondent met his burden to establish both of the disputed issues in this case. Moreover, the Immigration Judge did not allow the DHS to voir dire the witness before he provided his testimony, despite a request by the DHS based on concerns regarding his expertise on key issues in the case.

Immigration Judges have long relied on expert testimony in immigration proceedings to help them make factual determinations "regarding matters on which they possess little or no knowledge or substantive expertise." *Matter of Marcal Neto*, 25 I&N Dec. 169, 176 (BIA 2010).[5] An expert is defined "as someone who 'is qualified as an expert by knowledge, skill, experience,

---

[4] The respondent claims to fear harm, not from his own Government, but from Hezbollah or the cartels in Mexico operating on behalf of or in support of the Government of Iran.

[5] In fact, Federal courts have considered an alien's right to present expert testimony to be part of his or her statutory and due process rights to a fair hearing. *See, e.g.*, *Tassi v. Holder*, 660 F.3d 710, 721–22 (4th Cir. 2011) (concluding that the Immigration Judge erroneously rejected corroborative expert testimony); *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538–40 (7th Cir. 2005) (holding that the Immigration Judge denied the alien's due process rights when he precluded two experts from testifying to offer corroborating evidence, even though one of them had submitted an affidavit); *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1056–58 (9th Cir. 2005) (finding that the Immigration Judge's refusal to hear testimony from the alien's domestic violence experts violated due process).

training, or education.'"  *Matter of D-R-*, 25 I&N Dec. 445, 459 (BIA 2011) (quoting Fed. R. Evid. 702), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646, 648 (9th Cir. 2015).

An expert is distinct from a lay witness.  An expert witness "may testify in the form of an opinion or otherwise" if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  An expert may make reasonable inferences based on facts and data.  *Matter of D-R-*, 25 I&N Dec. at 460 (citing Fed. R. Evid. 703).  By contrast, lay witnesses generally cannot provide opinions but, instead, testify based on personal experience and perception.  *Matter of Y-S-L-C-*, 26 I&N Dec. 688, 690 (BIA 2015) (citing Fed. R. Evid. 602); *see also United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses.").  In this case, since the respondent's witness does not have personal experience related to the facts and circumstances of this case, his testimony was appropriate only to the extent it constitutes expert opinion.

A key purpose of qualifying a witness as an expert is to provide a framework for the Immigration Judge to evaluate the evidence.  In assessing whether to admit the testimony of a witness as an expert, an Immigration Judge should consider whether it is sufficiently relevant and reliable for the expert to offer an informed opinion.  *See United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (per curiam) (stating that the trial judge must ensure that an expert's testimony is both relevant and reliable).  If the testimony is determined to be admissible, the Immigration Judge should consider how much weight it should receive.  *Id.* at 1189; *Matter of D-R-*, 25 I&N Dec. at 460 n.13.

Generally, evidence is considered relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401; *see also Ruvalcaba-Garcia*, 923 F.3d at 1188 ("Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'" (citation omitted)).  Expert testimony in immigration proceedings is relevant if it will help the Immigration Judge understand the evidence or decide a fact in issue.  *Matter of D-R-*, 25 I&N Dec. at 459 (citing Fed. R. Evid. 702).[6]

---

[6]   There may be instances where an expert's testimony is deemed irrelevant and therefore inadmissible.  *See, e.g.*, *Kholyavskiy v. Mukasey*, 540 F.3d 555, 565–66 (7th Cir. 2008) (upholding an Immigration Judge's refusal to recognize a witness as an expert because he lacked an academic or research background on the topic at issue).  However, given the low standards for admissibility of evidence in immigration proceedings, expert testimony generally warrants being admitted in most cases.  *See Bouchikhi v. Holder*, 676 F.3d 173,

To be reliable, an expert's testimony must be "based on sufficient facts or data" that the expert "has been made aware of or personally observed" or from sources that "experts in the particular field would reasonably rely on." Fed. R. Evid. 702(b), 703; *see also United States v. Hankey*, 203 F.3d 1160, 1167–70 (9th Cir. 2000) (finding a police gang expert reliable based on his years of experience with gangs and his contact with the specific gang members involved).

There is no uniform, rigid process for qualifying an expert witness in immigration proceedings.[7] The Immigration Court Practice Manual states that a proposed expert's curriculum vitae or résumé must be made part of the record. Immigration Court Practice Manual § 3.3(g), at 53 (July 2, 2020). In addition, an opposing party should have the opportunity to cross-examine the proposed expert witness about his or her qualifications and the scope of the testimony and to object to the admission of the testimony. *See id.* § 4.16(d), at 80. We have also recognized that "Immigration Judges have broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence," including witness testimony. *Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010); *see also* section 240(b)(1) of the Act, 8 U.S.C. § 1229a(b)(1) (2018); 8 C.F.R. §§ 1003.10(b), 1240.1(c) (2020); *cf. Ruvalcaba-Garcia*, 923 F.3d at 1188 (noting that trial courts have broad latitude to assess an expert's testimony).

In this case, the Immigration Judge did not allow the DHS counsel to voir dire the respondent's witness before he testified, although he gave counsel an opportunity to challenge the witness's qualifications on rebuttal, both during cross-examination and in written closing argument. While it was within the Immigration Judge's authority to conduct the hearing in this manner, this case illustrates why it is a better and more efficient practice to allow the parties to question the proposed expert about his or her expertise before substantive testimony is offered, if they request to do so. Voir dire would have allowed the parties to establish the parameters of the witness's testimony, potentially limiting and focusing it on the specific issues within his expertise. Instead, we are now considering his qualifications after he provided almost 100 pages of testimony, requiring us to evaluate whether he

---

180–81 (5th Cir. 2012) (per curiam) (stating that the Immigration Judge's "categorical[] reject[ion]" of an expert's testimony was "not optimal" and that a "better practice would be to allow the expert to explain the scope and basis of his particular expertise, and then to hear counsel out regarding how that expertise will bear on the material issues").

[7] During oral argument, the DHS requested that we adopt a uniform standard for qualifying expert witnesses. We decline to do so. Although we have looked to the Federal Rules of Evidence as guidance, we have never adopted those rules when considering evidentiary issues in immigration proceedings, and it would not be practical to do so. *See Matter of D-R-*, 25 I&N Dec. at 458 n.9.

was, in fact, an expert on all the issues he testified about and whether his opinion was sufficient for the respondent to meet his burden of proof.

Counsel for the DHS objected to the scope of the witness's testimony when he stated during direct examination that Iran's extra-territorial assassinations were not his "full area of expertise." Despite the witness's concession, the Immigration Judge found his testimony to be admissible and deserving of "significant weight." The parties do not dispute the Immigration Judge's finding that the witness's testimony was admissible. However, the Immigration Judge did not sufficiently explain why he gave so much weight to the witness's testimony and extensively relied on it to establish the respondent's claim, particularly given the admitted limits on the scope of his expertise. Although the witness may be an expert on country conditions in Latin America generally, the issues in this case are specific to Iran's ability and intent to harm the respondent in Mexico and the Mexican Government's ability and willingness to protect him. The Immigration Judge found that the witness "came with a wealth of background knowledge," but he made no specific findings regarding the witness's expertise as to the issues in dispute.

In order to give significant weight to the testimony of a person qualified as an expert, the Immigration Judge should determine that the witness's testimony is probative and persuasive regarding the key issues in dispute in the case. *See Matter of D-R-*, 25 I&N Dec. at 460 n.13 ("An Immigration Judge who finds an expert witness qualified to testify may give different weight to the testimony, depending on the extent of the expert's qualifications or based on other issues regarding the relevance, reliability, and overall probative value of the testimony as to the specific facts in issue in the case."). Questions regarding an expert's testimony in Immigration Court often go to the weight given to testimony, rather than to its admissibility, in part because a court's traditional "gatekeeping" function of screening out expert testimony that is "not sufficiently reliable or trustworthy" for a jury is less significant where the judge is the trier of fact, as in the immigration context. *United States v. Brown*, 415 F.3d 1257, 1266–70 (11th Cir. 2005); *see also United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (stating that questions relating to the reliability of an expert's opinion generally affect the weight given to the opinion, rather than its admissibility); *Akinfolarin v. Gonzales*, 423 F.3d 39, 43 (1st Cir. 2005) (holding that the Immigration Judge's reasons for finding an expert's evidence unreliable were valid and supported the Immigration Judge's conclusion that the evidence should not be "given much credence").

An Immigration Judge should only find an expert's opinion to be persuasive if there is a reliable factual or evidentiary basis for his or her conclusions. *See United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003)

(stating that if an expert's opinion is "to be of value," there must "be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support"); *see also Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 420 (7th Cir. 1990) ("Experts' opinions are worthless without data and reasons."). There is no indication that the Immigration Judge reasonably considered whether the witness's opinion had a sufficient factual basis to essentially establish the respondent's claim.

For example, despite finding that the witness's testimony was "supported by the documents he offered," the Immigration Judge did not identify what evidence provided the basis for his testimony that Hezbollah and Mexican drug cartels may work together to target the respondent on behalf of Iran. The witness testified that Iran has targeted political opponents in Latin America, but he cited no evidence that Iran carries out such activities in Mexico. The only reference to Hezbollah in Mexico relates to the organization's work with cartels to smuggle drugs and people.

In addition, the Immigration Judge did not identify the facts or data supporting the witness's testimony that the Mexican Government is unable and unwilling to protect the respondent from pro-Iranian actors, particularly Hezbollah or Mexican drug cartels. In this regard, we note that the witness only discussed the "weaknesses in Mexico's criminal justice system" and provided an example of a well-known journalist who was killed in Mexico.

We also note the respondent's testimony that he believes Iranian agents chased another student in his group when he went to the airport to pick up the respondent's bags. He claimed that those agents also surveilled his home on numerous occasions, cut his telephone and power lines, and entered and searched his home in Mexico after he came to the United States. The respondent's aunt testified that she reported the possible surveillance and break-in to the police and that the police conducted an investigation. However, the Immigration Judge did not explicitly consider any of this police action when determining whether the Mexican Government has the ability or willingness to protect the respondent.

The Immigration Judge did not make a finding that there was a reliable factual or evidentiary basis for the expert's opinion to support his conclusion that the opinion was so persuasive as to deserve "significant weight." Without such a finding, we cannot exercise our de novo review of the Immigration Judge's determination that the respondent met his burden of proof to establish eligibility for asylum. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 591 (BIA 2015) ("[W]e will accept the underlying factual findings of the Immigration Judge unless they are clearly erroneous, and we will review de novo whether the underlying facts found by the Immigration Judge meet the legal requirements for relief from removal . . . .").

Moreover, the Immigration Judge did not address the issues raised by the DHS regarding the greater weight that was given to the witness's testimony, compared to the other evidence that was presented.  A factual basis for the witness's testimony is especially important in this case since it does not appear to be consistent with the State Department country reports entered into the record.  Although the witness insisted that Hezbollah works with Mexican drug cartels in Mexico, the 2016 Country Reports on Terrorism states that "there are no known international terrorist organizations operating in Mexico."  U.S. Dep't of State, Bureau of Counterterrorism, *Country Reports on Terrorism 2016–Mexico* (July 19, 2017); *see also id.*, *Country Reports on Terrorism 2019–Mexico* (June 24, 2020), https://www.state.gov/reports/country-reports-on-terrorism-2019/mexico/ (stating that "there was no credible evidence indicating international terrorist groups established bases in Mexico, worked directly with Mexican drug cartels, or sent operatives via Mexico into the United States").

Although the State Department country reports should not be given dispositive weight to the exclusion of all other country conditions evidence, the reports provide important evidence that should be given reasoned consideration.  *See Sowe v. Mukasey*, 538 F.3d 1281, 1285 (9th Cir. 2008) ("U.S. Department of State country reports are 'the most appropriate and perhaps the best resource for information on political situations in foreign nations.'" (citation omitted)); *see also Ali v. Holder*, 637 F.3d 1025, 1030–31 (9th Cir. 2011) (noting the importance of the State Department reports, but emphasizing the need for an "individualized determination" of an asylum applicant's eligibility); *Chand v. INS*, 222 F.3d 1066, 1077 (9th Cir. 2000) (acknowledging that the State Department reports may not contain all the information relevant to an asylum applicant's claim).

In this case, the Immigration Judge did not address the State Department reports, except to state that the witness's testimony "was not rebutted by the government, including with the articles offered by the [DHS]."  This general statement is insufficient to explain why his testimony was more reliable than the Department of State reports.  *See Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) (remanding where potentially dispositive evidence of country conditions was not given reasoned consideration); *Bromfield v. Mukasey*, 543 F.3d 1071, 1077 (9th Cir. 2008) (remanding where the Immigration Judge did not address key aspects of the State Department country report).

In sum, in assessing whether to admit the testimony of a witness as an expert, an Immigration Judge should consider whether it is sufficiently relevant and reliable for the expert to offer an informed opinion, and if it is admitted, the Immigration Judge should then consider how much weight the testimony should receive.  If a party challenges the expert's qualifications, it is generally best to allow the party, upon request, to voir dire the witness

before the testimony is presented in full.  In considering how much weight to give an expert's testimony, the Immigration Judge should assess how probative and persuasive the testimony is regarding key issues in dispute for which the testimony is being offered.  However, to the extent that the record contains contradictory evidence, the Immigration Judge should explain why inferences made by the expert are reasonable and more persuasive than the other evidence presented.  Without such findings, we are unable to determine whether an Immigration Judge's reliance on an expert's testimony was reasonable.

Given our limited fact-finding ability on appeal, we conclude that a remand is necessary for the Immigration Judge to make specific findings regarding the scope of the witness's expertise as to the key issues in dispute and to determine whether there is evidence in the record that would support his opinions.  On remand, the Immigration Judge should also explain why he finds the witness's testimony more persuasive than the other evidence in the record, to the extent they may be inconsistent.  *See Matter of S-H-*, 23 I&N Dec. 462, 465–66 (BIA 2002) (emphasizing the need for Immigration Judges to include in their decisions clear and complete findings and analysis, in view of the Board's inability to conduct fact-finding on appeal).

Accordingly, the DHS's appeal will be sustained in part and the record will be remanded for further proceedings. In remanding, we express no opinion as to the ultimate outcome of the case.

**ORDER:**  The appeal of the Department of Homeland Security is sustained in part.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $813 for each day the respondent is in violation.  *See* Section 274D of the Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2020).