NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

SEP 5 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-50056 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00533-RGK-1 |
| v. | |
| JAZZMON UNIQUE RUSSELL, AKA Jasmine Russell, AKA Jazzman Unique Russell, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted July 15, 2024
Pasadena, California

Before: PAEZ and SANCHEZ, Circuit Judges, and LYNN,[**] District Judge.

Jazzmon Russell ("Russell") appeals his conviction under 18 U.S.C.

§ 922(g)(1) and his statutory maximum sentence. We have jurisdiction under 28

U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons explained below, we vacate

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Barbara M. G. Lynn, United States District Judge for the Northern District of Texas, sitting by designation.

the judgment and sentence and remand for the district court to make a reliability determination as to the DNA evidence and expert testimony.

Russell raises several challenges to his conviction and sentence. He alleges the following errors: (1) admission of the DNA evidence and expert testimony without a reliability finding; (2) admission of the 911 and dispatch calls; (3) admission of subsequent act evidence; (4) an impermissibly coercive *Allen* charge; (5) insufficient evidence to support his conviction; (6) cumulative error; (7) denials of his motions to continue the trial and replace counsel; and (8) procedural and substantive errors in sentencing him to the statutory maximum. We address each challenge in turn.

1. Russell challenges the district court's admission of DNA evidence and expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. We review a district court's decision to admit evidence and expert testimony for abuse of discretion. *United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).[1]

The district court erred by failing to make an "explicit reliability finding"—

---

[1] Russell objected to the DNA evidence and sought to exclude it in a pre-trial motion in limine, and the district court denied the motion without explanation. Thus, Russell fairly preserved his objection for appeal. *See Tan Lam v. City of Los Banos*, 976 F.3d 986, 1005 (9th Cir. 2020).

as required by *Daubert*—before admitting the DNA evidence and expert testimony. *See Ruvalcaba-Garcia*, 923 F.3d at 1190 (quoting *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007)). The district court denied Russell's motion in limine seeking to exclude the DNA evidence without explanation, and the court's only statement regarding the expert testimony was that the expert "qualifies." Qualifying an expert without finding their proposed testimony reliable does not satisfy *Daubert*. *United States v. Valencia-Lopez*, 971 F.3d 891, 899 (9th Cir. 2020). The district court thus abused its discretion by failing to make an express reliability determination. *Ruvalcaba-Garcia*, 923 F.3d at 1189–90.

The district court's error was not harmless. To establish harmlessness, the government must show either (1) that the admitted expert testimony was relevant and reliable based on the record or (2) that it is more likely than not that the jury would have reached the same verdict even if the expert testimony had been excluded. *See id.* at 1190. The government has not made either showing here.

We cannot conclude from the trial record that the DNA evidence and expert testimony is reliable. *See id.* at 1190. The DNA expert testified about her use of STRmix, a probabilistic genotyping software, to analyze the DNA evidence in Russell's case. But the record raises questions about the reliability of this methodology and its application here. For instance, Russell's motion in limine cited to a 2021 report from the National Institute of Standards and Technology

3

("NIST"), which concludes that "there is not enough publicly available data to enable an external and independent assessment of the degree of reliability of DNA mixture interpretation practices, including the use of probabilistic genotyping software (PGS) systems" like STRmix. National Institute of Standards and Technology, *DNA Mixture Interpretation: A NIST Scientific Foundation Review*, at 6, 75 (June 2021) [hereinafter *NIST Report*], https://doi.org/10.6028/NIST.IR.8351-draft. [2] The NIST report highlights the lack of "established and accepted criteria for reliability with complex mixtures involving contributors containing low quantities of DNA template." *Id.* at 82.

The report also discusses how the number of assumed contributors, the percentage of the suspect's contribution, and the amount of DNA at issue can affect the reliability of probabilistic genotyping for complex samples. *Id.* at 5–6, 20, 30–31, 75. These factors are critical to assessing whether the methodology was reliably applied in a given case, as required by Federal Rule of Evidence 702. *See* Fed. R. Evid. 702(d) (indicating that an expert's opinion should reflect "a reliable application of the principles and methods to the facts of the case"); *Daubert*, 509 U.S. at 593 (holding that the district court should assess "whether that reasoning or methodology properly can be applied to the facts in issue").

---

[2] The NIST, an agency of the U.S. Department of Commerce, conducts studies to review the scientific bases of forensic methods. *See NIST Report*, at ii.

The DNA samples in Russell's case involved three- and four-person mixtures and low quantities of DNA. The record does not contain information about the percentage of Russell's assumed contribution to the DNA samples. Nor is the exact amount of DNA in the samples fleshed out in the record. In fact, the record implies that only one of the samples contained the amount of DNA that the expert would typically use. Additionally, it is not clear whether STRmix had been properly validated for use with three- and four-person mixtures containing the miniscule amounts of DNA at issue here.[3] The record suggests that the expert's lab had performed a validation study for up to three-person mixtures, but one of the samples at issue had four assumed contributors. Accordingly, the record does not establish that STRmix was reliably applied in this case.

Nor can we conclude that admission of this evidence was otherwise harmless given other evidence against Russell. *See Ruvalcaba-Garcia*, 923 F.3d at 1190–91 (discussing harmless error). The DNA testimony was a critical piece of evidence in the government's case against Russell. The government stressed this evidence

---

[3] A lack of proper validation may render DNA evidence unreliable. *See e.g.*, *United States v. Williams*, 382 F. Supp. 3d 928, 929, 936–38 (N.D. Cal. 2019) (granting motion to exclude DNA evidence analyzed by probabilistic genotyping program due to questions about the number of assumed contributors, the lab's lack of validation for a higher number of contributors, and the amount of DNA); *see also United States v. Ortiz*, No. 21-CR-2503-GPC, 2024 WL 2889873, at *4–10 (S.D. Cal. June 10, 2024) (granting motion to exclude DNA evidence analyzed by STRmix due to concerns over the number of assumed contributors and the lab's lack of validation for a higher number of contributors).

repeatedly during closing argument, and acknowledged before this court that it was a "key piece[] of evidence."

The district court's failure to make a reliability finding is particularly concerning in light of the questions raised in the record about STRmix and its application here. We are persuaded that the district court's failure to make a reliability finding before admitting the DNA evidence and expert testimony was not harmless. We therefore vacate the judgment and remand for the district court to make the requisite reliability determination. *See United States v. Bacon*, 979 F.3d 766, 767 (9th Cir. 2020) (en banc) ("The remedy may include remanding for a new trial or remanding for the district court to first determine admissibility."). On remand, the district court should consider how the factors discussed above affect the reliability of the methodology here, as well as whether the lab's validation procedures indicate that the methodology was reliably applied in this case.[4]

2. The district court did not abuse its discretion in admitting the 911 and dispatch calls. Admission of these recordings did not violate the Confrontation Clause, and the statements were admissible as present-sense impressions or excited utterances. *See* Fed. R. Evid. 803(1)–(2).

---

[4] For instance, while *United States v. Gissantaner*, 990 F.3d 457, 463–467 (6th Cir. 2021), found STRmix to be generally reliable, it also found that the lab there had complied with national standards and had validated results for minor contributors and small amounts of DNA. *Gissantaner*'s discussion of STRmix's reliability under the *Daubert* factors, however, predates the NIST report discussed above.

First, because the primary purpose of the 911 and dispatch calls was to respond to an "ongoing emergency," all relevant statements in this case were non-testimonial and thus do not implicate the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813, 821–23, 827–28 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)).

Second, the statements in both recordings were either admissible under hearsay exceptions or harmless. The first caller's statements on the 911 call were "nearly contemporaneous with the incident," and she had "personal knowledge" of what she described—her statements were thus admissible as present-sense impressions or excited utterances. *Bemis v. Edwards*, 45 F.3d 1369, 1372–73 (9th Cir. 1995); *see also* Fed. R. Evid. 803(1)–(2). The second caller's statements should not have been admitted because she lacked firsthand knowledge—she stated she had been "asleep" and that her statement that she heard gunshots was actually "[b]ased on what everyone said." Nonetheless, admission of the second caller's hearsay statements was harmless because her statements were redundant of admissible statements by the first caller. *See United States v. Torres*, 794 F.3d 1053, 1061 (9th Cir. 2015) (discussing harmless error).

As for the dispatch call, the police officer's statements were admissible as present-sense impressions or excited utterances because the officer was describing events they witnessed. *See Bemis*, 45 F.3d at 1372–73.; *see also* Fed. R. Evid.

7

803(1)–(2). The dispatcher's statements were admitted for "the limited purpose of [describing] why Long Beach Police Department officers responded" to the scene, and were thus not hearsay. *See* Fed. R. Evid. 801(c)(2); *see also United States v. Cawley*, 630 F.2d 1345, 1350 (9th Cir. 1980).

3. The district court did not abuse its discretion in admitting evidence of Russell's subsequent arrest under Federal Rule of Evidence 404(b). The subsequent act was similar to the charged offense—both incidents involved the discovery of guns in a secret compartment of Russell's car—and was admissible to prove knowledge or modus operandi. *See United States v. Lloyd*, 807 F.3d 1128, 1157–58 (9th Cir. 2015) (discussing criteria for admitting subsequent act evidence). The district court also gave a limiting instruction, which reduced the risk of unfair prejudice. *See United States v. Cherer*, 513 F.3d 1150, 1159 (9th Cir. 2008).

4. The district court's instruction to the jury when it informed the court that it could not reach a verdict was not impermissibly coercive. *See United States v. Berger*, 473 F.3d 1080, 1090 (9th Cir. 2007). Although the district court did not "remind jurors of their duty and obligation not to surrender conscientiously held beliefs simply to secure a verdict for either party," *United States v. Mason*, 658 F.2d 1263, 1266 (9th Cir. 1981), the charge was brief and relatively neutral. There were no other indicia of coercion. District court judges should generally remind

8

jurors not to surrender their conscientiously held beliefs, *see Mason*, 658 F.2d at 1266, but under the totality of the circumstances, we cannot say that the jury was impermissibly coerced here, *see Berger*, 473 F.3d at 1090.

5. Considering the evidence in the light most favorable to the government, there was sufficient evidence for a reasonable jury to convict Russell. *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). We "must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (internal quotation marks omitted).

The evidence presented at trial included: the 911 caller's statement that she thought Russell was outside her home shooting; testimony from a police officer that after stopping Russell's car he saw Russell's hands move near the center console, Russell did not show his hands for ten minutes, and that after searching Russell's car, police found guns in a secret compartment near the console; evidence of a subsequent incident in which the police found guns in a secret compartment in Russell's car; and finally, evidence that Russell's DNA was likely found on the guns. Taken together, and viewed in the light most favorable to the government, this evidence was sufficient for a reasonable jury to convict Russell. On remand, however, if the court does not find the DNA evidence to be reliable, this evidence may not be sufficient for conviction.

6. As to Russell's trial, there was no cumulative error here because there was only one prejudicial error. *See United States v. Preston*, 873 F.3d 829, 835 (9th Cir. 2017) (discussing the combined effect of multiple errors).

7. The district court did not abuse its discretion by denying Russell's pretrial continuance request and post-trial motion to replace counsel. The district court properly denied Russell's motion to continue the trial given that the motion represented only that Russell, not his counsel, needed more time to review discovery. *See Morris v. Slappy*, 461 U.S. 1, 12 (1983). Denying the continuance was thus not arbitrary or unreasonable. *See United States v. Audette*, 923 F.3d 1227, 1240 (9th Cir. 2019). As for the denial of Russell's post-trial motion for new counsel, the district court did not abuse its discretion because it held a hearing to inquire into the alleged conflict of interest, which provided a "sufficient basis for reaching an informed decision." *See United States v. Reyes-Bosque*, 596 F.3d 1017, 1033–34 (9th Cir. 2010) (internal quotation marks omitted).

8. Finally, the district court failed to consider the pertinent statutory factors under 18 U.S.C. § 3553(a) and to explain why it sentenced Russell to ten years in prison. The district court's only explanation for imposing the statutory maximum was: "That is a maximum. It's a low term under the guidelines, but it's a maximum allowed." The district court thus did not explain its decision "sufficiently to permit meaningful appellate review." *United States v. Carty*, 520

F.3d 984, 992 (9th Cir. 2008) (en banc). And given that Russell presented evidence of serious childhood trauma at sentencing, among other considerations, the court should have considered this mitigating evidence in its sentencing decision.

The district court's error here is clear. *See United States v. Hammons*, 558 F.3d 1100, 1105 (9th Cir. 2009) ("[T]he district court should have been aware of the requirement that it consider the § 3553(a) sentencing factors and state on the record the reasons for imposing [] [the] sentence."); *see also United States v. Waknine*, 543 F.3d 546, 554 (9th Cir. 2008) (Failure to "consider expressly the § 3553(a) factors" is plain error.). We thus vacate Russell's sentence. If the district court ultimately reinstates Russell's conviction, it should, after appropriate consideration of the § 3553(a) factors, resentence Russell and provide an adequate explanation for its decision.

Accordingly, we vacate the judgment and sentence and remand for further proceedings consistent with this disposition.

**VACATED AND REMANDED.**